LAKESIDE IRRIGATION CO. ET AL. V. MARKHAM IRRIGATION CO.
ET AL.

No. 4539.  Decided June 23, 1926.
(285 S. W., 593).

**Venue—Irrigation—Diversion of Flow.**

The action was by proprietors of irrigation plants against those of similar works higher up the stream, and sought to prevent defendants from diverting from plaintiffs' ditches and land the flow of water to which they had become entitled by prior appropriation. Defendants' plants and the diversion they caused were in another county, which constituted the place of business and domicile of defendant corporations controlling them, and they plead right to be there sued. *Held,* that the suit was properly brought in the county where plaintiffs' ditches and land sought to be irrigated were located. Venue in that county was authorized by the following statutes.

(1)  The action was one for damages to plaintiffs' land and crops within the meaning of Sec. 24, Art. 1995 (1830), Rev. Stats., 1925, and so properly brought in the county in which such land was situated. (Pp. 73, 78-81).

(2)  The wrongful acts charged against defendants in diverting from plaintiffs' land water to the use of which for irrigation they had acquired a right appurtenant thereto so affected plaintiffs' title to such land that suit for prevention thereof was maintainable in the county in which it was situated, under Sec. 14 of Art. 1995 (1830), Rev. Stats., 1925. (Pp. 73-77).

(3)  A corporation chartered in another State, but obtaining permission

to do business in Texas, was suable in any county where the cause of action or any part thereof arose—here in the county in which the land injured by diversion of water was situated, though not doing business or having an agent there.   Sec. 27 of Art. 1995 (1830).   (P. 78).

(4)   The question whether the wrongful acts charged constituted a trespass on plaintiffs' land warranting action under Sec. 9 of Art. 1995, though the wrongful act (diversion) was committed in another county, is deemed unnecessary to answer, in view of the answers to other questions. (P. 78).

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Matagorda County.

The Supreme Court referred the questions to the Commission of Appeals, Section B, for its opinion thereon, and here adopts same and directs that it be certified as its answer.

*Carothers & Brown* for appellant, Lakeside Irrigation Co.

*A. J. Wirtz* for appellant, Garwood Irrigation Co.

Where the primary object of the suit is to restrain the defendants from committing an alleged wrongful and unlawful act, the suit is one for an injunction, and can only be brought and maintained in the county of the defendants' residence, notwithstanding the determination of the right of defendants to commit such act, or the right of plaintiffs to restrain the commission thereof, may collaterally involve the determination of title to land.   Acts of 1913, p. 388, Sec. 47; Acts of 1917, Chap. 58, Sec. 74; Chamberlain v. Fox. 54 S. W., 297; City of San Marcos v. I. & G. N. Ry. Co., 167 S. W., 292; City of Victoria v. Schott, 29 S. W., 681; Cohen v. Munson, 59 Texas, 237; Cyc., Vol. 40, p. 57, p. 58, p. 59; Cyc., Vol. 19, p. 869, par. 9; Freeman v. Kuechler, 45 Texas, 596; Graves v. McCollum & Lewis, 193 S. W., 217; Henderson v. Kissam, 8 Texas, 55; Hollis v. Finks, 34 Texas Civ. App., 12, 78 S. W., 555; Cary v. Daniels, 5 Metc. (Mass.), 236; Lee v. Gilchrist Cotton Oil Co., 215 S. W., 977; Melvin v. Chancy, 8 Texas Civ. App., 252, 28 S. W., 242; O'Connor v. Shannon, 30 S. W., 1097; Pool v. Pickett, 8 Texas, 122; Revised Civ. Stats., Arts. 4653, 1830; Springer v. Collins, 108 S. W., 292; Whitlock v. Greacen, 48 N. J. eq., 359.

Suit can only be brought and maintained in the county of defendants' residence, or, if the defendants be corporations, in some county where the cause of action or a part thereof arose or accrued, and a cause of action based on the wrongful taking of property to which plaintiffs claim title, arises or accrues only in a county where such property is wrongfully taken.   In this case the water to which plaintiffs claim title was taken by defendants in Colorado County, and not in Matagorda County.

Texas Seed & F. Co. v. Schnoutze, 209 S. W., 495; Pittman & Harrison Co. v. Shook, 228 S. W., 993; Pittman & Harrison Co. v. Boatenhamer, 210 S. W., 972; Sinton State Bank v. Tyler Commercial College, 231 S. W., 171; Guinn v. Texas Drug Co., 219 S. W., 507; Lasater v. Waits, 95 Texas, 553.

*C. R. Wharton* and *Dan Jackson,* for appellees.

(a) Our suit is one to fix and establish water rights and to remove cloud from title, and under Sec. 14 of Art. 1830 must be brought in the county where the land or any part thereof lies.

(b) Under Sec. 24 of the same article suits against any private corporation may be commenced in any county where the cause of action or a part thereof arose. Under the decisions this cause of action arose in Matagorda County.

(c) The defendant Garwood Company is a foreign corporation, and under Sec. 28 of the same statute foreign corporations may be sued in any county where the cause of action or a part thereof accrued.

(d) Under the ninth section of Art. 1830, where the foundation of a suit is some offense or trespass for which a civil action in damages may lie, this case can be maintained in Matagorda County, where the trespass is committed.

Authorities: American R. G. Ld. & Irrig. Co. v. Mercedes Plantation Co., 155 S. W., 293; Asphalt Belt Ry. Co. v. Uvalde Rock Asphalt Co., 256 S. W., 575; Conant v. Deep Creek Co., 66 Pac., 188; Cyc., Vol. 40, pp. 81-84; Deseret Irrig. Co. v. McIntyre, 52 Pac., 628; Last Chance Water-Ditch Co. v. Emigrant Ditch Co., 61 Pac., 960; Long on Irrigation, pp. 297, 461; Lower Kings River Ditch & Water Co. v. Kings River & Fresno Canal Co., 60 Cal., 408; Moe v. Wagner, 77 Pac., 647; Railway v. Anderson Co., 150 S. W., 240; Rickey Land & Cattle Co. v. Miller & Lux, 152 Fed., 11; Taylor v. Hulett, 97 Pac., 37, 19 L. R. A. (N. S.), 536.

MR. PRESIDING JUDGE POWELL delivered the opinion of the Commission of Appeals, Section B.

This cause is before the Supreme Court upon the following certificate from the Honorable Court of Civil Appeals of the First District:

"In the above styled cause, now pending in this court on motion for rehearing, we deem it advisable to certify for your decision the questions hereinafter propounded which arise upon

the following statement of the pleadings and evidence disclosed by the record:

"Appellees, each of whom is a Texas corporation with its domicile in Matagorda County, brought this suit against the Lakeside Irrigation Company, a corporation organized under the laws of this State and having its domicile in Colorado County, and the Garwood Irrigation Company, an Ohio corporation, having a permit to do business in this State, its place of business and domicile in this State being in Colorado County.

"Plaintiffs' petition alleges in substance that plaintiffs are organized and chartered as irrigation companies and own and operate irrigation canals and ditches in Matagorda County and also own lands adjacent to the canals and that the operation of said irrigation canals and the irrigation of the lands adjacent thereto is dependent upon water taken from the Colorado River.

"After alleging the number of acres of land which each of the plaintiffs and defendants is entitled, under its permit from the State, to irrigate with water taken from the Colorado River, the petition contains the following allegations:

## " 'FOURTH.

" 'Plaintiffs further allege that notwithstanding the defendant Lakeside Company has no right to take water from the Colorado River for irrigation purposes for a greater area of land than above stated, that nevertheless it did, in the year 1923, take water from the Colorado River, and appropriate same to the irrigation of more than fifteen thousand (15,000) acres of land, or nearly four (4) times the volume of water that it was entitled to take. And said Lakeside Company has so extended its canals and its pumping capacity as to enable it to irrigate this last named acreage and it plans and is now engaged in preparation for the irrigation season of 1924, to take and use and appropriate water to irrigate as much as twenty thousand (20,000) acres of land, though, in point of fact, its water rights are limited as aforesaid.

" 'Plaintiff further alleges that notwithstanding the defendant Garwood Company has no right to take water from the Colorado River for irrigation purposes for a greater area of land than above stated, that nevertheless it did, in the year 1923, take water from the Colorado River, and appropriate same to the irrigation of more than seven thousand five hundred (7,500) acres of land, or nearly three (3) times the volume of water that it was entitled to take. And said Garwood Company has

so extended its canals and its pumping capacity as to enable it to irrigate this last named acreage, and it plans and is now engaged in preparations for the irrigating season of 1924, to again take and use and appropriate water to irrigate as much as ten thousand (10,000) acres of land, though in point of fact, its water rights are limited as aforesaid.

### " 'FIFTH.

" 'Plaintiffs further allege that the intakes of the plaintiff companies, and the points of diversion from which they take water from the river, for the purpose of applying same to the lands upon their canals, are in Matagorda County, Texas, and that the lands watered by them through their canals are all in Matagorda County, Texas, and that these lands and canals and points of diversion are more than thirty (30) miles below the pumping plants and points of diversion of the defendant companies in Colorado County, Texas.

" 'Plaintiffs further aver that both themselves and the defendant divert and use water solely for the irrigation of rice, which is the only crop which can be profitably irrigated by any of the parties hereto. That the irrigation season for rice begins about the 1st of May of each year, and the rice crop reaches its maximum requirements during June, July and August. That normally these last three months are the dry season in Texas, and in normal years the flow of the Colorado River and the volume of water therein available for irrigation is often lower during these months than during other periods of the year. That since it is necessary for all rice irrigators to take water during this period, the uses of all the companies plaintiff and defendant herein require them to draw upon this volume of water during this same period. * * *

### " 'SIXTH.

" 'Plaintiffs further aver that the volume of water in the Colorado River, at and below Columbus, in Colorado County, Texas, during normal years, is not sufficient to water in excess of sixty thousand (60,000) acres. That there are many years in which, due to drought and meagre rainfall, this volume of water will not be sufficient to irrigate more than half of such acreage, and they aver that the volume of water in said river, which reached Matagorda County, and was available for their uses

in the season of 1923, was not sufficient to irrigate as much as thirty-five thousand (35,000) acres. * * *

" 'That if the defendants are permitted to take the volume of water in 1924 that they did take in 1923, or are permitted to take any volume of water from the river in excess of the amount that they have the right to take under their appropriation, and uses, they will be taking water that does not belong to them, to which they have no right, and water that is covered by the appropriations owned and controlled by the plaintiffs, and that they will thus deprive the plaintiffs of a part of their fixed and vested water rights.

### " 'SEVENTH.

" 'The plaintiffs allege that they and their predecessors in title have made vast improvements, and investments in canal plants, canal systems and equipment, and plans for irrigating large areas of land in Matagorda County, these improvements and expenditures amounting to in excess of one million ($1,000,-000.00) dollars. That they have at this large expense and after years of effort built up large and successful irrigation systems. That the defendants, because of their position on the river, are able to divert and take such volumes of water as they will, regardless of the rights of these plaintiffs, and that in taking and appropriating such excess volumes of water as they did during the year 1923, they thus deprive these plaintiffs of water to which plaintiffs were entitled, and caused a shortage and loss of crops upon plaintiffs' canals.

### " 'EIGHTH.

" 'Plaintiffs aver that so long as these defendants continue their wrongful diversion of this volume of water to which they are not entitled, that these plaintiffs and their water users and water tenants are without remedy and are wholly at the mercy of the defendants. That if the water supply runs low during June, July and August, the defendants will, without regard to any limitation upon their rights, take all of the water that they want, depleting the volume that should come down to these plaintiffs, and the plaintiffs are wholly without remedy.

" 'That when such wrongful excess taking occurs, or is about to occur, the plaintiffs will have no remedy. If they should file a bill for a temporary injunction, and take testimony at a hearing, such delay would be ruinous, for it often happens during this critical season that a rice crop will be destroyed by heat and

drought in a single week, sometimes in a shorter period. And if these plaintiffs should await the time of such unlawful and excess is about to occur, or is in progress, and seek to restrain the defendants at such time, they would be without efficient remedy, for it would happen that while the parties litigated, the rice crops upon the plaintiffs' canals would be destroyed, while those of the defendants would have been saved, with water that should have been left unmolested to reach the plaintiffs' canals. And the plaintiffs and their water tenants would be without remedy at law, and would be put to burdensome and expensive litigation from year to year.

### " 'NINTH.

" 'Plaintiffs aver that as the owner of said canal systems in Matagorda County, Texas, and because of their appropriations and uses and water rights aforesaid, they are entitled to have the volume of water necessary to irrigate the acreage aforesaid come down to them, and to their plants, and intakes, and canals undiminished by the wrongful taking and diversion by the defendants or either of them of the water to which they are not entitled, and that the continuous wrongful taking of these defendants as aforesaid, situated as they are upstream, and with the power to take what they will is a constant menace and threat of damage to these plaintiffs.

### " 'TENTH.

" 'The plaintiff, Markham Irrigation Company, is the owner of large bodies of land upon its canals, and all of the plaintiffs have numerous water tenants along and upon their canals, to whom they furnish water for irrigation from year to year, and the plaintiffs because of the appropriations and uses, have acquired the right to have the volume of water to which they are entitled flow down the river to their intakes, and into their canals, and this right, privilege and franchise inheres and is part of their canal systems, in the lands bordering upon their canals. The continued invasion of these rights by the defendants and the threatened invasion thereof in the ensuing year and in years to come is a constant menace, and cloud upon the rights and title of the plaintiffs.

### " 'ELEVENTH.

" 'Wherefor, premises considered, plaintiffs pray that the defendants be cited as required by law in such cases, and upon

hearing hereof, that the plaintiffs have judgment fixing and establishing their water rights, as aforesaid, and that it be decreed that the defendants are not entitled to take volumes of water in excess of their rights, as stated in paragraph 3 hereof, and that the plaintiffs and each of them have judgment removing cloud from the title to the water rights, and privileges, occasioned by the continuous invasion, trespass and threatened invasions and trespasses of the defendants, and for an injunction perpetually restraining the defendants and each of them from taking any water in excess of their rights, during the months of May to August, inclusive, of each year, and for such other relief, both general and special, as the plaintiffs are entitled to have, both in law and equity.'

"Each of the defendants filed and presented in due time a plea of privilege to be sued in Colorado County, where each has its domicile. Each of these pleas contained all statutory requirements, and in addition thereto, the plea of the Garwood Irrigation Company alleges that it has a permit to do business in Texas, and that its office and agency for the State of Texas is at Garwood, in Colorado County, and that it has never had an office or agency or done business elsewhere in this State.

"In controverting affidavits, presented by plaintiffs, they claim venue in Matagorda County on the following grounds: (1) Under Sec. 24, Art. 1830, of Vernon's Sayles' Civil Statutes; on the ground that the damage caused plaintiffs' lands and crops in Matagorda County by the alleged wrongful taking of the water by the defendants in Colorado County was an essential part of plaintiffs' cause of action, and, each of plaintiffs and defendants being a corporation, the suit could be brought in Matagorda County. (2) Under Sec. 14 of said statute, on the ground that the suit is, in effect, one to quiet title and prevent injury to land in Matagorda County, and therefore the suit was properly brought in that county. (3) Under Sec. 9 of said statute, on the ground that the alleged wrongful act of each of the defendants was a trespass committed in Matagorda County, and, under the section cited, venue was properly laid in that county.

"In addition to these grounds, plaintiffs controverted the plea of Garwood Irrigation Company on the further ground that plaintiffs' cause of action accrued in Matagorda County and that the Garwood Company, being a foreign corporation, could be sued in Matagorda County, under Sec. 28, of said statute.

"On the hearing in the court below, both pleas of privilege were overruled. From the conclusions of fact and law filed by

the trial judge, at the request of appellants, it appears that the court sustained all of the grounds of venue asserted in appellees' controverting affidavits.

"At a former day of the present term of this court we affirmed the judgment of the trial court, overruling appellants' pleas of privilege to be sued in the county of their domicile. On motion for rehearing appellants ask that in event we decline to grant the motion, we certify to your honorable court for decision the question of whether the district court of Matagorda County was authorized ·to overrule the pleas of privilege upon any of the grounds upon which its judgment is based.

"Because no writ of error will lie from our judgment, and the final disposition of the case will be facilitated and made less burdensome to the litigants by a prompt and final determination of the question of venue, we grant appellants' request and respectfully certify for your decision the following questions: First: Does plaintiffs' petition allege a cause of action for injury or damage to land and crops in Matagorda County caused by the wrongful acts of the defendants, which will entitle plaintiffs to maintain this suit in that county under Sec. 24, Art. 1830, Vernon's Sayles' Civil Statutes? Second: Do the alleged wrongful acts and claims of the defendants so affect the title to plaintiffs' lands in Matagorda County as to entitled them to maintain this suit in said county under Sec. 14 of the Article of the statute before cited? Third: Is the suit maintainable in Matagorda County under Sec. 9 of said Article on the ground that the alleged wrongful acts of defendants was a trespass committed in Matagorda County? Fourth: Is the suit maintainable in Matagorda County against the appellant Garwood Irrigation Company under Sec. 28 of the statute above cited?"

The second question refers to subdivision or section 14 of Article 1830 of the Revised Civil Statutes of Texas of 1911, reading as follows:

"14. Suits concerning lands.—Suits for the recovery of lands or damages thereto, suits to remove incumbrances upon the title to land, suits to quiet the title to land, and suits to prevent or stay waste on lands, must be brought in the county in which the land, or a part thereof, may live."

The District Court sustained venue of this suit in Matagorda County, where the land is situated. The Court of Civil Appeals affirmed that holding in the very able opinion by Chief Justice Pleasants. We have carefully reviewed his opinion and the authorities cited by him and have reached the conclusion that

the Court of Civil Appeals correctly decided this question. We feel that we can do no better than quote from that opinion in answering the second question certified. Such quotation is as follows:

"In an able brief, appellants vigorously assail all of the conclusions of law upon which the judgment of the trial court is based, and further contend that the evidence is insufficient to sustain appellees' claim that defendants are taking or threatening to take more water from the Colorado River than their permit authorizes.

"The first proposition presented by appellants' brief assails the judgment on the ground that this is primarily a suit for injunction, and any question involving title to (or) injury to lands in Matagorda County is merely collateral to the granting of relief sought which, if granted, will operate primarily upon the person of the defendants and therefore, under Article 4653, Vernon's Sayles' Civil Statutes, the suit must be brought in the county of defendants' domicile.

"If the suit which seeks to establish plaintiffs' rights to water from the Colorado River for the operation of their irrigation system and the irrigation of their lands adjacent thereto in Matagorda County and to determine the legality of acts or claims of defendants, which deny and impair plaintiffs' rights as appropriators of the waters of the river, can be regarded as a suit to remove cloud and quiet plaintiffs' title to land in Matagorda County, the injunction, while essential and necessary to the full preservation of plaintiffs' right, is only auxiliary to plaintiffs' cause of action, and the statute cited by appellants is not controlling.

"The question has never been decided in this state but has frequently been passed upon by the courts of other states, and it has been generally held that a suit of this character is in its nature a suit to quiet title to land and must be brought in the jurisdiction in which the land is situated.

"We think this is a sound conclusion.

"Plaintiffs' right to the water flowing through their canals obtained under their permits from the State is in its nature real estate, such right being appurtenant to the land is a part of the freehold and the title thereto passes and is inseparably connected with the title to the land.

"In the case of American Etc. Company vs. Mercedes Plantation Company, 155 S. W., 293, the Court of Civil Appeals for the Fourth District says: 'The right of an abutting land owner

to receive water from appellant is as complete and definite as his right of possession. It is an incorporeal hereditament as inseparable from the land as any other quality of title.'

"It is true that the court in the case cited was speaking of the rights of a land owner other than the Irrigation Company, but we can see no sound reason for any distinction in the nature and quality of the right acquired under our irrigation statute by the Irrigation Company and that acquired by the individual owner of lands adjoining the irrigation canal.

"In Long on Irrigation, page 297, the law is thus stated:

" 'In its nature, a water right or an interest in a water right and ditch is real estate, and a perpetual right to have a certain quantity of water flow through an irrigating ditch is a freehold estate. So, also, the right of a riparian proprietor, as such, to the use of water flowing by his land, is "identified with the realty, and is a real and corporeal hereditament." And the right of an irrigation company to have the water flow in the stream to the head of its ditch is an incorporeal hereditament appurtenant to the ditch, and is co-extensive with the right to the ditch itself. Further, it has been held that the right to take or divert water from the land of another constitutes an easement.' Many cases are cited in support of the text.

"The cases cited are largely, if not entirely, from Western States in which irrigation companies have been operating for a number of years under irrigation statutes similar to ours by which they obtain permits to take waters from the rivers. The cases fully sustain the rule announced by Mr. Long and there is nothing in our statutes which calls for the application of a different rule.

"Plaintiffs' right to have the water, to which they are entitled under their grants from the State, flow into their canals and ditches and upon their lands in Matagorda County is so identified with the realty as to become a part thereof, and the alleged wrongful acts of the defendants in preventing this flow is a direct injury to plaintiffs' land and a denial of their title which is thereby clouded, and plaintiffs' suit to establish their rights and title and silence the claims of the defendants asserted through their alleged wrongful acts is in its nature and effect a suit to remove cloud and quiet title, the venue of which is fixed by our statute in the county in which the land is situated.

"In the case of Conant et al. v. Deep Creek Irrigation Co., 23 Utah, 627, 66 Pac., 188, the Supreme Court of Utah, in passing upon the question of the jurisdiction of the courts of one

state to determine the title and right to the use of water of an interstate stream for irrigating lands in another State, says:

" 'An action therefore to quiet the title and determine and establish the right to divert and use water for such purposes is in the nature of an action to quiet title to real estate and must be commenced and prosecuted in the courts of the state in which the same is situated.'

"The opinion further holds:

" 'It is a recognized rule of law that a person who has appropriated water at a certain point in a stream is entitled to have so much of the waters of said stream as he has appropriated flow down to him to the point of diversion; and if the settlers higher up on the stream, in another state, whose appropriations are subsequent, divert any of the waters of the stream which have been so first appropriated, then the courts of the latter state will protect the first settler in his rights. Howell v. Johnson (C. C.), 89 Fed., 556.'

"The fact that the question in the case cited was the jurisdiction of the courts of one state of a cause of action arising from wrongful acts committed by defendants in another state does not militate against the application of the holding to the question of venue of courts of different counties in the same State. The holding, that the right to the water was an appurtenance to the land and a part of the realty, and that a suit to establish and determine such right and prevent its impairment was in its nature a suit to quiet the title to land, was the basis upon which the jurisdiction of the state in which the land was situated was placed. If the holding as to the nature of the suit is sound, and as before said we think it is, the venue of appellees' suit must be held to be in Matagorda County.

"The following quotation from the opinion of the United States Circuit Court of Appeals for the Ninth District, in the case of Rickey Land and Cattle Co. v. Miller & Lux, 152 Fed., 11, shows how uniformly the courts have held that a water right of the kind involved in this suit is real property, and that a suit involving the title to such right is a suit affecting the title to land:

" 'A water course consists of bed, banks and water.' Angel on Water Courses, Sec. 4. The right of plaintiff, as stated in its complaint, to have the water flow in the river to the head of its ditch, is an incorporeal hereditament appertaining to its water course. Granting that plaintiff does not own the corpus of the water until it shall enter its ditch, yet the right to have

it flow into the ditch appertains to the ditch. Real property consists of land, that which is affixed to land, and that which is incidental or appurtenant to land. Civil Code, 658. If the water course, consisting of the bed and banks of the trench, and of the water therein, be real property, the right to have water flow to it is incidental and appurtenant thereof.'

" 'And, generally, it is held that:

" 'The right of the prior appropriator to have the water flow in the stream to the head of his ditch is an incorporeal hereditament appurtenant to his ditch, and co-extensive with his right to the ditch itself.' Willey v. Decker, 73 Pac., 210, 225, 11 Wyo., 496, 100 Am. St. Rep., 939; Smith v. Denniff, 60 Pac., 398, 24 Mont., 20, 81 Am. St. Rep., 408.

" 'Or, putting it in another form that:

" 'A right to divert and use the water of a stream, acquired by appropriation, is a hereditament appurtenant to the land for the benefit of which the appropriation is made.' Conant v. Deep Creek & Curlew Val. Irr. Co., 66 Pac., 188, 23 Utah, 627, 90 Am. St. Rep., 721.

" 'See, also, Simmons v. Winters, 21 Or., 35, 27 Pac., 7, 28 Am. St. Rep., 727; Hindman v. Rizor, 21 Or., 112, 27 Pac., 13; Bear Lake & River Waterworks & Irrigation Co. v. Ogden City, 8 Utah, 494, 33 Pac., 135; Tucker v. Jones, 8 Mont., 225, 19 Pac., 571; Sweetland v. Olsen, 11 Mont., 27, 27 Pac., 339; Cave v. Crafts, 53 Cal., 135.

" 'So it follows, as a deduction from these principles, as was said in the Conant case, that:

" 'An action, therefore, to quiet the title and determine and establish the right to divert and use water for such purposes, is in the nature of an action to quiet the title to real estate.'

"We think it clear that if our conclusion as to the nature and purpose of appellees' suit is correct, it necessarily follows that the injunctive relief sought is auxiliary to the main purpose of the suit, and the prayer for such relief does not bring the suit within the purview of Art. 4653 of the statute before cited, requiring suits for injunction to be brought in the county of the defendant's residence or domicile. The District Court of Matagorda County, having jurisdiction to determine and establish plaintiffs' title to the water, claimed by them, and to quiet plaintiffs' title and right thereto, it also acquired jurisdiction of the defendants and was authorized to issue any writ necessary to accomplish the purpose of the suit."

Believing that the court, in the opinion quoted, has already

correctly answered its own question No. 2 in the affirmative, we recommend that it be answered by the Supreme Court in the affirmative.

Having held the jurisdiction of this cause in Matagorda County for the reason already stated, the Court of Civil Appeals expressly pretermitted a decision upon the other alleged grounds of jurisdiction in that county. For the same reason, we think it unnecessary for us to recommend answers to any of the other questions certified.

But, we do believe, and therefore recommend, that questions one and four should be answered in the affirmative. We express no opinion whatever as to how the third question certified should be answered.

Our answers to the first and fourth questions are based upon the theory that corporations, domestic or foreign, with permits to do business in Texas, are suable in any county where "the cause of action, or a part thereof, arose." See Subdivisions 24 and 28 of Article 1830, supra.

We think it clear that at least a part of this cause of action arose in Matagorda County. A case very much in point, its nature and result, will be seen from the following quotation from the brief filed in the Court of Civil Appeals for appellees:

"Desert Irrigation Co. et al. v. McIntyre et al., 16 Utah, 398, 52 Pac., 628. An action was brought in Millard County to determine the rights of plaintiffs and defendants to waters of the Sevier River flowing between a certain dam in Sanpete County and the canals of the plaintiffs in Millard County, and for a perpetual injunction to prohibit defendants from using or in any manner interfering with the use of the water to which plaintiffs were entitled. Defendants filed a motion to dismiss on the ground that the court in Millard County did not have proper jurisdiction, which motion was sustained. On the appeal of the case the defendants insisted that the case should have been brought in Sanpete County, where the alleged wrongful acts were committed, citing a constitutional provision of that state which provides:

" 'That all civil and criminal business arising in any county must be tried in such county, unless a change of venue was taken, in such cases as may be provided by law.'

"On appeal the appellants insisted that this action was properly brought in Millard County, because the dam and ditches of the plaintiff and land to be irrigated by the dams and ditches were situated in that county, and this regardless of the fact

that the principal place of business and residence of the defendants and their dams and ditches were in the County of Sanpete. It was the further contention of the appellees that the cause of action set up consisted of certain trespasses on real property situated in Sanpete County.

"The higher court reversed and remanded the case in part in the following language:

" 'As has been seen, it is the settled law of this State, both by constitutional provision and judicial construction, that every suit must be brought in the county in which the cause of action arose. Therefore when, in a case like the one at bar, the plaintiff bases his right to recover on certain material facts, some of which arose in one county and some in another, all of which being essential to his right, the important question is, where did the cause of action arise? * * *

" 'All wrongs are regarded as merely a privation of right, and the natural remedy is to put the injured party in the same position as he was before the wrong was committed. This may be effected by making restitution of the subject-matter in dispute or by making pecuniary satisfaction in damages. An inchoate right to receive satisfaction accrues to an injured party the moment he receives a wrongful injury, though the damages may not be fully ascertained, until determined by the intervention of law by action brought for that purpose. The term 'action' is defined to be 'the lawful demand of one's right.' 3 Bl. Comm., 116. Where, therefore, a wrong has been committed by one person, and injury has resulted, as a sequence, to another, the injured party has a lawful demand against the wrongdoer. *If the injury be to real property, as a trespass, or waste, or the like, an action therefor will be local, and the plaintiff must declare his injury to have happened in the county and place where it did actually happen* (italics ours); and if the acts which caused the injury in one county were committed in another, or if the cause of action consists of two or more material facts, which arose in different counties, the venue at common law may be laid in either. 3 Bl. Comm., 294, and note 3; Com. Dig., 263, note 11; 1 Chit. Pl., 268, 269; Sutton v. Clarke, 6 Taunt., 29. * * * The general doctrine at common law, no doubt, is that an action for injury to real property, as trespass, or case for nuisance, is local, and must be commenced within the county or district in which the land lies. Where, however, an act has been committed in one county or district, which caused injury to realty in another, suit may be brought in

either. In such case the cause of action may be said to have arisen in either county. In Gould, Pl. p. 105, Sec. 108, referring to actions local, the author says: 'If, however, a tortious act, committed in one county, occasions damage to land or any other local subject, situate in another, an action for the injury thus occasioned may be laid in either of the two counties, at the choice of the party injured. Thus, if, by the diversion or obstruction of a water course in the county of A, damage is done to lands, mills, or other real property in the county of B, the party injured may lay his action in either of those two counties.' In Bulwer's Case (7 Coke, 2b), the law on this subject is stated thus: 'When one matter in one county is depending upon the matter in another county, there the plaintiff may choose in which county he will bring his action. * * * In all cases where the action is founded upon two things done in several counties, and both are material or traversable, and the one without the other doth not maintain the action, there the plaintiff may choose to bring his action in which of the counties he will.' Among the examples given in the case is this: 'If a man doth not repair a wall in Essex, which he ought to repair, whereby my land in Middlesex is drowned, I may bring my action in Essex, for there is the default, as is adjudged in 7 Hen., 4, pl. 8, or I may bring it in Middlesex, for there I have the damage.' So in Barden v. Crocker, 10 Pick., 390, the Supreme Court of Massachusetts said: 'And the second point is equally clear for the plaintiff. He may unquestionably maintain his action in either county—in Bristol, where the obstruction was raised, as well as in Plymouth, where the injury was sustained.' 28 Am. & Eng. Enc. Law, 225-227; Lower Kings River Water-Ditch Co. v. Kings River & Fresno Canal Co., 60 Cal., 408; Foot v. Edwards, 9 Fed. Cas., 358 (No. 4908) ; Thayer v. Brooks, 17 Ohio, 489, 49 Am. Dec., 474; Oliphant v. Smith, 3 Penn. & W., 180; Marshall v. Hosmer, 3 Mass., 23. Some of the decisions hold that, in cases of this character the action must be brought in the county or state where the resulting injury occurred. Thompson v. Crocker, 9 Pick., 59; Eachus v. Trustees, 17 Ill., 534; Thorn v. Maurer, 85 Mich., 569, 48 N. W., 640 Deacon v. Shreve, 23 N. J. Law, 204. While these cases do not militate against, but support, the venue as laid in the case at bar, still we are of the opinion that the doctrine hereinbefore stated is decidedly supported by the weight of authority; and this case comes clearly within that doctrine, as will appear from an examination of the facts.'

" 'Neither the facts relating to the diversion alone, nor those

relating to the injury alone, are sufficient to constitute a cause of action against the defendants. This is so, because the mere construction of dams and ditches in Sanpete County, or even the diversion of the water from the river, gave the plaintiffs no right to complain, so long as the water to which they were entitled was not diverted thereby. Likewise, as to the injury, unless it were shown that it was caused by the wrongful acts of the defendants. Thus it is plain that some of the material facts arose in Sanpete County and some in Millard County, and the cause of action may properly be said to have arisen in each county. Therefore the plaintiffs had the right to elect in which they would bring their action, and having chosen to bring it in Millard County, where a part of that which is essential to their right to recover took place the venue was properly laid.' "

It seems clear to us that "in cases of this kind where the wrongful act is begun in one county and consummated in another, the suit may be prescribed in either county at the election of the plaintiff."

Our own State has not had irrigation laws for any great length of time. We have but few, if any, cases in the Texas appellate courts upon certain rights of this nature. We are much impressed, therefore, by the following statement in the brief for appellees just referred to by us:

"The court must be impressed with the fact that the decisions from the Western States cited are well thought out and carefully expressed. They represent the learning of the judiciary of those States from which our water laws come, and we cannot ignore the construction of these statutes in the jurisdictions where they were first written and where experience has dictated their meaning and effect."

Therefore, as already stated, we recommend that the first, second and fourth questions certified each be answered in the affirmative and that the third question before us remain unanswered.

Opinion of the Commission of Appeals answering certified question is adopted and ordered certified to the Court of Civil Appeals.

*C. M. Cureton*, Chief Justice.