GULF TELEVISION COMPANY, Appellant,

v.

Perry BROWN, Appellee.

No. 13080.

Court of Civil Appeals of Texas.

Galveston.

April 4, 1957.

Rehearing Denied April 26, 1957.

Wigley, McLeod, Mills & Shirley and V. W. McLeod and Preston Shirley, Galveston, for appellant.

Cleveland Davis, Angleton, and Bracewell, Tunks, Reynolds & Patterson and Bert H. Tunks, Houston, for appellee.

GANNON, Justice.

This is a venue appeal. Its determination depends upon the applicability vel non of Exception 14 of Article 1995, V.A.T.S., providing venue in suits for the recovery of damages to land in the county where the land lies. Plaintiff claims this exception is applicable to the venue facts. Defendant—appellant here—denies the applicability of Exception 14 and insists that the venue of the action is governed by Article 4656, V.A.T.S., expressly providing venue of ordinary injunction suits in the county of the residence of the defendant.

The suit is one by Perry Brown against Gulf Television Company, a Texas corporation, domiciled in Galveston County. It was filed in Brazoria County where plaintiff resides. Defendant seasonably filed its plea of privilege to be sued in Galveston County. This was controverted by the

plaintiff, who alleged the suit to be fundamentally one to recover damages to land. At a hearing on the plea of privilege, plaintiff introduced his petition and proved that the land described therein lay wholly in Brazoria County, so that if the petition shows the suit to be one fundamentally and primarily for damage to that land, the plea of privilege was not well taken. Allison v. Yarborough, Tex.Civ.App., 228 S.W.2d 930. The trial court sustained venue in Brazoria County, and this appeal follows.

Since it is undisputed that the land described in the petition lies in Brazoria County, the controlling venue fact is the petition itself which, with the exception of the introductory paragraph and unnecessary detail descriptive of the land referred to in the petition, we quote in full, including the prayer:

"I.

"The Plaintiff is now, and has been at all times material hereto, the owner of a tract of land consisting of approximately four hundred fifty acres, located in Brazoria County, Texas, said tract of land being commonly known as Clover Field Airport, and being more particularly described as follows (here follows description):

"II.

"The said tract of land above described by virtue of its location was, in 1947, and still is, ideally adapted for use as an airport, being sufficiently near to metropolitan areas as to be accessable, and, until the construction of the tower hereinafter described, being situated sufficiently distant from tall structures as to reduce to a minimum hazards to planes using it as an airport. Because of such fact the Plaintiff, in about the year 1947, began to use the said tract of land as an airport to which use the land has been applied continuously on down through the present date. In the Plaintiff's application of the use of his said tract of land as an airport, he has constructed costly improvements thereon consisting of runways, hangars and other facilities necessary to the maintenance of an airport. In constructing such facilities Plaintiff has incurred reasonable and necessary costs in the approximate amount of One Hundred Fifty Thousand Dollars and the facilities so constructed by him for such purposes have a reasonable value of approximately One Hundred Thousand Dollars. The said facilities so constructed by the Plaintiff upon his said tract of land are of such nature as to be valueless except as facilities in the operation of an airport.

"III.

"On or about the 7th day of April, 1956, the Defendant, Gulf Television Company, began the construction of an antenna tower upon a tract of property acquired by them for such purposes at a geographical location identified as 29° 27′ 57″ North Latitude, 95° 13′ 24″ West Longitude, said geographical location, and the site of the said tower, being located in Galveston County, Texas. Since such date, and over the protests of Plaintiff, the Defendant has proceeded with the construction of such tower and has constructed it to a height of approximately twelve hundred feet above the ground level. The said tower is supported by numerous heavy metal guy wires extending out as much as a forth of a mile from its base.

"IV.

"Among the facilities constructed by the Plaintiff upon the tract of land for airport purposes is the principal runway which is a hard surface runway 80 feet wide and 4,000 feet long laid out along a course of 136 degrees. The television antenna tower constructed by Defendant, as above alleged, is, from the center of Plaintiff's said airstrip a distance of approximately 3.6 miles along a course of 155 degrees.

"V.

"That the construction and maintenance by the Defendants of the tower above de-

scribed constitutes an airport hazard which endangers the lives and property of users of Plaintiff's airport and the occupants of land in its vicinity; that it is of the obstruction type and in effect reduces the size of the area available for the landing, taking off and maneuvering of aircraft which use Plaintiff's airport thus tending to destroy and impair the utility of his said airport. That because of such circumstances, the said tower so constructed and maintained by the Defendant constitutes a nuisance in fact, as well as a statutory nuisance as defined in Article 46e–2 of Vernon's Civil Statutes of the State of Texas, Annotated. The Defendant's construction and maintenance of said nuisance is a direct and proximate cause of an irreparable injury and damage to Plaintiff's land; that the said nuisance is of a continuing nature and unless this Court shall issue its mandatory order compelling the removal thereof the Plaintiff will sustain irreparable injury and damage.

"VI.

"Plaintiff would further show that the Defendant is engaged in the business of operating television station KGUL, Channel 11, Galveston, Texas, and its construction of the above described tower is for the purpose of carrying on such business. As the operator of such television station the Defendant is acting under a license from the Federal Communications Commission which authorizes it to furnish television to the metropolitan area of the City of Galveston; that the Defendant at the time of its construction of the tower above described already had a television antenna tower located at another site, which was fully sufficient for its purpose of exercising its authority under the license from the Federal Communications Commission to furnish television service to the entire metropolitan area of Galveston; that its construction of the tower above described at the location and to the height above described constitutes the use by the Defendant of its property in an unlawful and unreasonable manner not necessary to

its exercise of its full rights under its license from the Federal Communications Commission, and at the same time constitutes an unlawful and unreasonable use by the Defendant of the property in such a manner as to proximately cause the Plaintiff to sustain an irreparable injury and damage to his above described airport, impairing the usefulness of his property for such purpose and destroying the value of the improvements which he has constructed and which are useable only for airport purposes.

"VII.

"That, as hereinabove alleged, the highest and best use to which the Plaintiff can apply his land is as an airport; that as a direct and proximate cause of the Defendant's construction and maintenance of the above described television antenna tower the value of Plaintiff's property for such purpose and use, as well as the value of the improvements constructed by Plaintiff for such purpose and use, have been wholly destroyed to Plaintiff's damage in the sum of Two Hundred Fifty Thousand Dollars.

"Wherefore, Plaintiff prays that the Defendant be cited to appear and answer herein and that upon a final trial hereof the Plaintiff have and recover from the Defendant a judgment for mandatory injunction by which the Court order the Defendant to remove its above described television antenna tower; and in the alternative Plaintiff prays that it recover from the Defendant judgment for his damages, as above alleged, in the sum of Two Hundred Fifty Thousand Dollars, together with interest, costs of court and such other and further relief, general and special, legal and equitable, to which he may be justly entitled."

It is noted that the principal and primary relief sought by plaintiff is a mandatory injunction which would operate solely in personam. It is also noted from the prayer that recovery of money damages is by the petition wholly subordinated to plaintiff's primary prayer for relief,

that is to say, that damages whether to land or only to plaintiff's business enterprise are not unqualifiedly sought but only alternatively and contingently, and conditioned upon plaintiff's failure to obtain the primary relief which he seeks; so that it is entirely possible the suit could go to final judgment completely in plaintiff's favor, with plaintiff obtaining full relief on his primary prayer. In which event any question of plaintiff's right to recover damages which plaintiff seeks only alternatively, conditionally and contingently, would never be reached. For illustration see second appeal from judgment on the merits in Rogers v. Scaling, Tex.Civ.App., 298 S.W.2d 877.

Hutcheson v. International & Great Northern R. Co., 102 Tex. 471, 119 S.W. 85, 86, was a suit such as the present where the plaintiff set forth a cause of action with a proper prayer for relief, but followed this with alternative prayers. The Supreme Court said, "We attach but little importance to the alternative prayers for relief * * *. Now since we think that the allegations in the petition preceding the first prayer stated a cause of action, it seems to us the other alternative prayers go out of the case."

■ Since Pool v. Pickett, 8 Tex. 122, it has been established that under our venue statutes a defendant is entitled to be sued at his residence, except under well-defined exceptions. To deprive a defendant of this right it must clearly appear that a particular suit is *within* one of the exceptions found in the statutes,—Burtis v. Butler Bros., 148 Tex. 543, 226 S.W.2d 825,—and *without* any law specially regulating venue of actions of a particular character, such as Art. 4656, V.A.T.S., expressly prescribing venue of ordinary injunction suits. Article 1995, V.A.T.S., subd. 30.

■ It seems well established that "The nature of the principal right asserted and the relief sought in an action ordinarily determines the venue." 43–B Tex.Jur., Venue, Sec. 4, p. 113.

The venue statutes of California, like those of Texas, evidence a general spirit and policy to give, preserve and protect the right of a defendant to have all personal actions against him tried in the county of his residence, and it is held in that state that when an action personal in nature is joined, even conjunctively, with a local action the personal action governs venue. In Turlock Theatre Co. v. Laws, 12 Cal.2d 573, 86 P.2d 345, 347, 120 A.L.R. 786, the court said, a "plaintiff cannot, by uniting in his complaint matters which form the subject of a personal action with matters which form the subject of a local action, compel the defendant to have both of those matters tried in a county other than that in which he resides." That the Texas decisions go so far is doubtful, but we have found no case and are cited to none in Texas or elsewhere where the question was discussed in which relief on a cause of action asserted only alternatively, contingently and conditionally was held determinative of venue. Rogers v. Scaling, Tex.Civ.App. Fort Worth, 285 S.W.2d 259, involved a petition not dissimilar from that presented here, in so far as the primary relief sought being purely personal in nature is concerned. There also damages were sought only alternatively and conditionally. However, the point we are discussing was not raised in Rogers v. Scaling, nor did the court notice it.

■ In our opinion, in an injunction case such as the present, where in any aspect of the petition damages of any kind, whether to land or otherwise, are sought only alternatively and conditionally, and especially where as here the allegations in support of the primary relief sought state a cause of action on their face, it would be doing violence to the spirit and true intent of our venue statutes to permit venue to be controlled by a cause of action only conditionally, alternatively and contingently relied on—a cause of action, recovery on which is not the primary and principal purpose of the suit, and which is wholly sub-

ordinate to a principal and primary purpose to obtain purely personal relief by injunction. Here there is no pleading for temporary damages, so that on plaintiff's petition if he is successful in obtaining injunctive relief, his pleadings would not authorize a recovery based on the permanent damage which he claims. We rule that the venue of the case is controlled by Art. 4656, V.A.T.S., and that Subd. 14 of Article 1995, V.A.T.S., is not properly applicable.

■ If we be wrong in the foregoing conclusion, still for another reason we do not think venue of this case is controlled by Subd. 14 of Art. 1995 because properly construed we do not believe that the petition in any view exhibits a suit for the recovery of damages to land. On the other hand, we are convinced that the alternative action for damages is actually one for consequential injuries flowing from a claimed illegal interference by defendant, through use of its own land in another county, with the privilege which the law recognizes in the operator of aircraft to enter the air space above land of another in a reasonable manner without interfering unreasonably with the possessor's enjoyment of the surface of the earth and the air space above it. Any right of plaintiff or of the patrons of his airport which the petition shows to have been violated is not one *in any way appurtenant as an incorporeal hereditament to plaintiff's Brazoria County land.* In fact, the right of plaintiff and of his patrons to navigate aircraft over the lands of others flows basically from a modern truncation of the "ad coelum" concept. This is based on the practical necessities of flight. But the privilege does not transcend the right of a landowner to make proper beneficial use of his land, notwithstanding the fact that the use may interfere with aerial navigation, albeit the landowner's ad coelum rights are now limited so that he may not arbitrarily and whimsically, for instance for purposes of spite or duress, erect air hazards when such hazards would be without reasonably conceivable benefit to himself. See Restatement, Torts, Sec. 159, Comment f, where it is said:

> "A temporary invasion of the air space by aircraft, for the purpose of travel through it or other legitimate purpose, if done in a reasonable manner, and at such a height as is in conformity with legislative requirements and does not interfere unreasonably with the possessor's enjoyment of the surface of the earth and the air space above it, is privileged."

See also Idem, Sec. 194, reading as follows:

> "An entry above the surface of the earth, in the air space in the possession of another, by a person who is traveling in an aircraft, is privileged if the flight is conducted
>
> "(a) for the purpose of travel through the air space or for any other legitimate purpose,
>
> "(b) in a reasonable manner,
>
> "(c) at such a height as not to interfere unreasonably with the possessor's enjoyment of the surface of the earth and the air space above it, and
>
> "(d) in conformity with such regulations of the State and federal aeronautical authorities as are in force in the particular State."

See, as well, the Texas Airport Zoning Act of 1947, Art. 46e–2, V.A.T.S., declaring airport hazards a public nuisance. However, when the legislative declaration of public policy is read in connection with the complete Act, of which it is a part, it is apparent to us there is no legislative purpose unreasonably to deny any owner due process in the enjoyment and use of his own land.

To constitute "damages thereto" [land] within the meaning of Subdiv. 14 of Art. 1995, V.A.T.S., the injury must be to the possession or to the freehold or estate. Miller v. Rusk, 17 Tex. 170; Thomson v. Locke, 66 Tex. 383, 1 S.W. 112; Lucas v. Patton, 49 Tex.Civ.App. 62, 107 S.W. 1143.

Plaintiff's petition in the present suit alleges no fact tantamount to an allegation of injury to the possession of his land or to his freehold or estate in it. Just what does and what does not constitute damage to land is not as well established by our own decisions, or those of sister states, as would be expected at this late date, but statutory provisions of various states fixing venue of actions relating to damages or injuries to personal property have been uniformly construed as embracing only causes of action stemming from physical injury to such property to the exclusion, for instance, of actions for violations of personal property *rights* based on conversion or detention. See the Annotation, Venue, Damage to Personal Property, 29 A.L.R.2d 1270.

To sustain the order overruling the plea of privilege, appellee relies principally upon Lakeside Irrigation Co. v. Markham Irrigation Co., 116 Tex. 65, 285 S.W. 593; Lower Colorado River Authority v. Camp Warnecke, Tex.Civ.App., 267 S.W.2d 840, and Rogers v. Scaling, Tex.Civ.App., 285 S.W.2d 259. We think all of these cases distinguishable. The first two were primarily suits to quiet title and establish water easements *appurtenant to land situated in the county where the suit was filed,* and the injunctive relief sought in them was only ancillary to the principal and primary purpose of the suits. In Rogers v. Scaling, the court did not announce the basis or reason for its decision, but the nature of the case involved there was not so dissimilar from the present suit as are the claims which were asserted in Lakeside Irrigation Co. v. Markham Irrigation Co. and Lower Colorado River Authority v. Camp Warnecke. In Rogers v. Scaling [285 S.W.2d 260] plaintiff and defendant owned adjoining downtown real estate. Defendant had erected a large electrical sign on the line dividing the two lots, which the appellee alleged to be a danger and hazard to his own property and persons on and about it. The petition, among other things, alleged, " * * * that the size, weight and dimensions of the sign constitute a danger to the life and limb of of any person passing under or near it, and particularly to appellee's property, and is a hazard to appellee's property and the plate glass windows in the front portion of his building; that the electric wires leading to the lights on said sign are a hazard and danger to the appellee's property * * *." We infer the Fort Worth court considered these allegations tantamount to an injury to plaintiff's quiet and peaceful possession of his land. We know of no other theory upon which the court could have reached the decision which it did. While we do not think our views are in conflict with those of the Fort Worth court announced in Rogers v. Scaling, supra, still if that is the case, we nevertheless respectfully disagree. It seems to us our views are in line with the result reached by the San Antonio court in Knox v. Redus, Tex.Civ.App., 290 S.W. 823, 824. In that case Redus and Howard sued Knox in Medina County, alleging Knox to be a resident of Travis County. Redus and Howard claimed venue was properly laid in Medina County on the ground, among others, that the suit, in addition to being one for injunction, was to prevent and stay waste on lands and to recover damages on that account. The plaintiffs alleged that Knox, after the termination and expiration of certain mineral leases under which he was claiming, was in possession of defendant's land and attempting to drill thereon. It was claimed that thereby plaintiffs were prevented from securing oil and gas development of their land, to their damage in the sum of $50 an acre, or a total of $40,-000, for which amount judgment was asked in addition to injunction. The trial court's order overruling defendant's plea of privilege was reversed and the venue of the suit ordered transferred to the county of defendant's residence. The court said:

> "There is nothing alleged or shown that conferred upon the district court of Medina County the right to require

the appellant, against his will, to answer and defend in that jurisdiction.

"The proof showed appellant to be a resident of Travis county, and not of Medina county, and being purely a suit for injunction, the venue was fixed in appellant's residence and county. It was a suit purely of a personal nature. It was to cancel a lease in respect to oil land and for damages, and was not based upon a trespass committed or attempted to be committed in Medina county, nor upon a contract in writing to be performed in that county, nor to prevent and stay waste on lands lying in Medina county. It was not alleged or shown that any of the exceptions of the exclusive venue statute, permitting the defendant to be sued in Medina county, applied."

The order of the trial court overruling defendant's plea of privilege is reversed and judgment will be rendered for appellant, sustaining its plea of privilege, and an order will be entered directing the trial court to transfer the case for trial in conformity with appellant's plea of privilege.

Reversed and rendered.