

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-24-00355-CV

DON B. MEADOR, KAREN S. MEADOR, KIMBERLY DAWN PLACE,
TRUSTEE OF THE BK EDWARDS WATER TRUST, AND MAXWELL
SPECIAL UTILITY DISTRICT, APPELLANTS

V.

GUADALUPE-BLANCO RIVER TRUST, A NON-PROFIT ORGANIZATION, APPELLEE

On Appeal from the 428th District Court
Hays County, Texas
Trial Court No. 23-0649, Honorable Tanner Neidhardt, Presiding

August 5, 2025

MEMORANDUM OPINION[1]

Before QUINN, C.J., and PARKER and DOSS, JJ.

"Spinning softly through the blue now" of the over 4,500-page appellate record,

appellants' briefs, appellee's brief, and appellants' replies, "It's getting to the point.

---

[1] The appeal having been transferred to this court from the Third Court of Appeals, we apply the latter's precedent should it conflict with ours. TEX. R. APP. P. 41.3.

Getting to the point."[2]

The point here is whether the trial court erred in concluding, through a final summary judgment, that "the Water Warranty Deed, Bill of Sale, and Assignment of Permit Rights (the Water Deed) . . . breached the separate conveyance prohibition in the Conservation Easement." Don B. Meador and Karen S. Meador (grantors under the Water Deed); Kimberly Dawn Place, trustee of the BK Edwards Water Trust (grantees under that Deed); and the Maxwell Special Utility District (lessee of water rights from the Trust) say it did. The Guadalupe-Blanco River Trust says it didn't. And, to the point, we affirm the final summary judgment because the trial court did not err.

### *Undisputed Facts*

With due apologies to the parties, we forgo delving into the viscera surrounding the body of their arguments and, rather, cut to the heart. Don and Karen Meador (Meador) acquired the Dreamcatcher Ranch (Ranch). Years later, in March of 2017, the two executed a conservation or "Agricultural Land Lease" (Ag Lease) with Guadalupe-Blanco. It encompassed their Ranch. Exhibit C of that lease contained a provision stating as follows: "Separate conveyance of a portion of the Property or division or subdivision of the Property is prohibited, except where state or local regulations explicitly require subdivision to construct residences for employees working on the Property."

In November of 2018, or about eight months after signing the Ag Lease, Meador executed another legal document. Entitled "WATER WARRANTY DEED, BILL OF SALE, AND ASSIGNMENT OF PERMIT RIGHTS - TRANSFER OF EAA PERMIT WATER RIGHTS" (Water Deed), it named the BK Edwards Water Trust (BK) as grantee. And,

---

[2] ELECTRIC LIGHT ORCHESTRA, *Getting to the Point*, *on* BALANCE OF POWER (CBS Associated 1986).

through the document, Meador "granted," "sold," "transferred," "conveyed," and "assigned" to BK "Water Rights." Those "Water Rights" consisted of "103.788 acre-feet per year of Edwards Aquifer permitted unrestricted irrigation groundwater, described in Edwards Aquifer Authority's (EAA) Permit Number P100-833 (HA002n) recorded with the Hays [C]ounty clerk as document #17026386, Official Public Records, Hays [C]ounty, Texas." BK, according to the Water Deed, was "TO HAVE AND TO HOLD the Water Rights, together with all and singular the rights and appurtenances thereto in any wise belonging, unto" Meador.

BK later leased to Maxwell "83.788 acre-feet per annum of unrestricted, fully transferable Edwards Aquifer water out of the Property." The "Property" referred to "consist[ed] of the real property" described in a warranty deed encompassing the Ranch. Accompanying the Property were the "right to withdraw and beneficially use 83.788 acre-feet of water per annum of Edwards Aquifer groundwater permitted by the Edwards Aquifer Authority and all real and personal property rights, appurtenances, permits, authorities, licenses, consents and contracts, if any, pertaining to all such property rights ('Water Rights')." Expressly included, according to the document, were 1) "83.788 Edwards Aquifer Authority (EAA) permit rights . . . issued by the EAA related to or pertaining to the 83.788 acre-feet of Water Rights held by Lessor," coupled with 2) "the right to withdraw and/or beneficially use the Edwards Aquifer water permitted to Lessor."

The foregoing transactions led to this lawsuit and Guadalupe-Blanco's moving for summary judgment. It alleged Meador breached the Ag Lease "as a matter of law by making a prohibited separate conveyance of . . . [the] Ranch's groundwater rights." The separate conveyance, in violation of the Ag Lease, occurred "by severing and conveying

3

groundwater rights from the surface estate" via "the Water Deed, which 'GRANTED, SOLD, TRANSFERRED, CONVEYED, AND ASSIGNED . . . [the specified] 'Water Rights' to the BK Edwards Water Trust." The trial court agreed and ultimately executed the final summary judgment so concluding.

### *Disposition*

The issues posed by Meador and Maxwell overlap.[3] They generally involve whether 1) the "Edwards Aquifer Authority permits" were real property subject to the Ag Lease's restrictions, 2) transferring the "Edwards Aquifer Authority permit" breached the Ag Lease's prohibition against separate conveyances, and 3) the transfer of 66.6 acre-feet of unrestricted irrigation under the "Edwards Aquifer Authority permits" was excluded from the Ag Lease. Given the interrelationship between *issues one* and *two*, we address, and overrule, them first.

Generally, a landowner owns the groundwater below the land's surface. *See Coyote Lake Ranch, LLC v. City of Lubbock*, 498 S.W.3d 53, 63–64 (Tex. 2016); *see also Edwards Aquifer Auth. v. Day*, 369 S.W.3d 814, 831–32 (Tex. 2012) (quoting *Elliff v. Texon Drilling Co.*, 146 Tex. 575, 210 S.W.2d 558 (1948)); *Edwards Aquifer Auth. v. Bragg*, 421 S.W.3d 118, 137 (Tex. App.—San Antonio 2013, pet. denied) (noting that the "landowner has absolute title in severalty to the water in place" under his land). Indeed, that water "is considered a part of the realty," *Bragg*, 421 S.W.3d at 137, and surface estate. *See Sun Oil Co. v. Whitaker*, 483 S.W.2d 808, 811 (Tex. 1972) (per curiam) (op. on reh'g). As such, it may be sold or otherwise severed from the surface just like minerals. *See City of Del Rio v. Clayton Sam Colt Hamilton Trust*, 269 S.W.3d 613, 617 (Tex.

---

[3] Indeed, the latter even adopted the brief of the former.

4

App.—San Antonio 2008, pet. denied); *see Coyote Lake*, 498 S.W.3d at 63 (stating that an interest in groundwater may be severed from the land as a separate estate just like an interest in minerals). And, that sale or severance need not be in toto. We gather as much since 1) ownership rights related to water and minerals under the land are treated comparably, *see Day,* 369 S.W.3d at 831–32, and 2) mineral owners may convey fractional interests in the mineral estate. *Concord Oil Co. v. Pennzoil Expl. & Prod. Co.*, 966 S.W.2d 451, 457 (Tex. 1998) (op. on reh'g). So, logically, interests in a groundwater estate may also be sold fractionally. And, there we find the answer to this appeal.

It has little to do with whether a permit issued by the EAA allowing the extraction of water constitutes an interest in realty. The answer to that is easy. Per EAA regulations, the classifications of groundwater as restricted or unrestricted specified in a permit "are appurtenant to the historically irrigated land." *Edwards Aquifer Authority Rule* 711.95 (stating that "[b]ase irrigation groundwater and unrestricted irrigation groundwater of an initial regular permit are appurtenant to the historically irrigated land"); *see also id.* 711.324(e) (stating that "[u]nless there is an express reservation of rights in the transferor, ownership of all or part of a permit issued with unrestricted irrigation groundwater shall be presumed to pass with the transfer of ownership of all or part of the historically irrigated land to which the permit is appurtenant"). "Appurtenant" means that the rights or obligations of a servitude are tied to the ownership or occupancy of the land. *Killam Ranch Props. v. Webb Cnty.*, 376 S.W.3d 147, 155 n.4 (Tex. App.—San Antonio 2012, pet. denied) (en banc) (op. on reh'g). As such, they normally run with and cannot be separated from ownership of the land. *Id.* (describing the effect of an easement appurtenant). In other words, appurtenant rights or obligations become part of the realty

5

itself.  *See Lakeside Irrigation Co. v. Markham Irrigation Co.*, 116 Tex. 65, 74, 285 S.W. 593, 596 (1926) (stating that "'Plaintiffs' right to the water flowing through their canals obtained under their permits from the State is in its nature real estate, such right being appurtenant to the land is a part of the freehold and the title thereto passes and is inseparably connected with the title to the land'").  So, in effect, EAA's own regulations strip viability from appellants' argument about the permit at issue here being something other than part of the land.  But, more importantly, Meador and Maxwell tend to ignore that the Water Deed conveyed more than a mere permit.

In short, the groundwater under the land Meador owned (i.e., the Ranch) was part of the realty, per *Day*.  Being owner of the land, Meador had the right to sell interests in that water, per *City of Del Rio*.  The interests sold could be fractional, per *Concord Oil.* And, in selling those interests, Meador would be selling, in effect, realty comprising the Ranch.  That is what happened when Meador conveyed the "Water Rights" to BK.

Again, the Water Deed to BK not only transferred "Water Rights" but also defined them as "***103.788 acre-feet per year of*** Edwards Aquifer permitted unrestricted irrigation ***groundwater***," which groundwater was described in the permit.  (Emphasis added). Assigning that language its plain, ordinary meaning, *Bluestone Nat. Res. II, LLC v. Randle*, 620 S.W.3d 380, 387 (Tex. 2021) (so requiring), means Meador sold BK an interest in the groundwater which could be extracted via an EAA permit.  Groundwater being an interest in realty means, in turn, that Meador sold BK a portion of the realty comprising the Ranch.  That the parties utilized a "deed" to effectuate the transfer reveals as much, for a deed purports to convey realty.  *See Lockridge v. McCommon*, 90 Tex. 234, 239, 38 S.W. 33, 35 (1896) ("The word 'deed,' as used in that instrument, is

6

commonly understood to mean an instrument in writing, duly executed and delivered, conveying real estate, and does not include a mortgage."); *accord Wilson v. Beck*, 286 S.W. 315, 320 (Tex. App.—Dallas 1926, writ ref'd) ("The commonly accepted meaning of the word 'deed' is that it is an instrument in writing, duly executed and delivered, conveying real estate as distinguished from a mere quitclaim.").

The water lease to Maxwell further confirms our interpretation of the "Water Deed." Through that document, BK leased Maxwell "83.788 acre-feet per annum of unrestricted, fully transferable Edwards Aquifer *water* out of the Property." (Emphasis added). It leased water, not the permit. And, logically, before BK could lease the water under the Ranch, it had to obtain ownership of that water. That ownership necessarily came through the Water Deed.

Simply put, more transpired than the mere transfer of an interest in some permit issued by EAA to extract water from the Ranch. The "Water Deed" actually conveyed a portion of the realty comprising the Ranch, i.e., part of the groundwater.[4] And, in so conveying part of the Ranch realty, Meador engaged in a "[s]eparate conveyance of a portion of the Property" (the Ranch) in violation of the Ag Lease. Thus, the trial court did not err in concluding as it did.

That leads us to addressing the ***last issue***. Through it, Meador and Maxwell suggested that the production of about 66 acre-feet of groundwater per year under an EAA permit was expressly excepted from the prohibition barring conveyances of the Ranch. This was so, in their view, due to a provision found in Exhibit D to the Ag Lease

---

[4] We cannot escape that the "Water Deed" also transferred "appurtenances," one of which was the EAA permit authorizing extraction of certain amounts of groundwater under the Ranch.

7

under the heading "Exceptions and Reservations." Of note, though, is that the parties to the Ag Lease mentioned Exhibit D in paragraph 24 of the lease. Paragraph 24 dealt with the warranty of title. Under it, the parties said as follows:

> Grantors' Warranty of Title. The Grantors covenant and represent that the Grantors are the sole owners and are seized of the Property in fee simple and have good right to grant and convey this Conservation Easement; that the Property is free and clear of any and all encumbrances ***except as specified in Exhibit D hereto***, including but not limited to, any mortgages not subordinated to this Agricultural Land Easement, and that the Grantee shall have the use of and enjoy all of the benefits derived from and arising out of this Agricultural Land Easement.

(Emphasis added). So, when read in context and contrary to their argument otherwise, the "Exceptions and Reservations" do not purport to remove any EAA permit from the scope of the prohibition against conveying portions of the Ranch. The "Exceptions and Reservations" merely reveal the existence of potential incumbrances on title; they exclude items, such as the EAA permit, from the warranty of title. So, we overrule the last issue as well.

The final summary judgment of the trial court is affirmed.


Brian Quinn
Chief Justice