RICHMOND BROTHERS, INC. *vs.* H. FREDERICK
HAGEMANN, JR., & others, trustees.

Suffolk.  February 5, 1971. — April 12, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, & BRAUCHER, JJ.

*Watercourse. Nuisance. Radio Broadcasting Station.*

In a suit in equity by the operator of a radio broadcasting station located
on a tidal creek upstream from adjoining premises of the defendants
to enjoin them from filling a part of the creek running through their
land and diverting it into a culvert thereon, a conclusion that there
would not be any violation of the plaintiff's riparian rights was war-
ranted by findings of the trial judge that at low tide there was no
water in the creek, that it served no useful purpose, that the culvert
would provide essentially the same quantity and quality of tidal water
to the portion of the creek running through the plaintiff's land as
existed before its installation, and that the diversion of the creek would
not affect the electrical conductivity of the plaintiff's land so as to
interfere with its broadcasting signal. [265–267]

In a suit in equity by the operator of a radio broadcasting station main-
taining transmitting towers on its premises to enjoin the defendants
from erecting a five story structure on their adjoining premises, there
was no merit in a contention by the plaintiff that possible distortion
to its radio signal from the erection of the structure would constitute a
private nuisance. [267–268]

BILL IN EQUITY filed in the Superior Court on Febru-
ary 2, 1970.

The suit was heard by *Kalus*, J.

*William Lender* for the plaintiff.

*Robert D. Power* (*Jordan P. Krasnow* with him) for the
defendants.

BRAUCHER, J.  The plaintiff appeals from a decree dis-
missing its bill to enjoin the defendants from creating and
maintaining a private nuisance by (1) blocking a navigable
stream, and (2) erecting structures on land adjacent to the
plaintiff's land.  After trial, the judge made findings, rul-
ings, and an order for decree, and the evidence is reported.

The following facts, except as indicated, are not in substantial dispute. The plaintiff (WMEX) is the operator of a radio broadcasting station pursuant to authority of the Federal Communications Commission (FCC), and maintains transmitting towers on its part of a salt marsh. The defendants (the Trust) purchased an adjacent part of the marsh. Sagamore Creek, a tidal creek, runs through the WMEX land and the Trust land to the Neponset River. The Trust plans to fill part of the creek, diverting it into a culvert, and WMEX claims that the electrical conductivity of its land will be diminished and its broadcasting signal adversely affected. The Trust also plans to erect a five-story structure, about seventy feet high, which at its nearest point will be about 680 feet from the nearest WMEX tower. The building will reradiate WMEX's radio signal and cause distortion to an extent not presently ascertainable. If the distortion is sufficiently great, as WMEX claims it will be, the WMEX signal may interfere with the signal of a radio station in Nashville, Tennessee, which broadcasts on the same frequency, and WMEX may then be in violation of its FCC license.

1. The judge found that at low tide there is no water in Sagamore Creek, that the creek does not have the capacity to be used for any useful purpose, and that it is not navigable. WMEX challenges these findings and contends that the filling of the creek will injure WMEX as an upstream riparian owner and will unlawfully obstruct a navigable waterway.

The judge found that the culvert will provide essentially the same quantity and quality of tidal water to the creek as it runs through the WMEX land as is now the case, and that the diversion of the creek will not affect the use of the water by WMEX as it passes its land. We read this as a finding that the electrical conductivity of the WMEX land will not be affected so as to interfere with its broadcasting signal. The finding is not plainly wrong, and it disposes of WMEX's claim as a riparian owner. *Weston* v. *Alden,* 8 Mass. 136, 137. *Stratton* v. *Mount Hermon Boys' Sch.*

216 Mass. 83, 84–85. See *Peters* v. *St. Aubin*, 355 Mass. 41, 44.

We do not think we are required to pass on whether Sagamore Creek is navigable. WMEX claims deprivation of its rights to pass over the water to the Neponset River and to enjoy the creek's boating and fishing. The judge found that no harm would be caused to WMEX, and at the argument WMEX conceded that it had no interest in boating or fishing. No case was made for equitable relief against interference with navigation. *Warner* v. *Mayor of Taunton*, 253 Mass. 116, 118. *Mayor of Cambridge* v. *Dean*, 300 Mass. 174, 175. Compare *Home for Aged Women* v. *Commonwealth*, 202 Mass. 422, 426–428.

2. WMEX contends that, although the Trust has the privilege of making reasonable use of its own property, a balance must be struck between that privilege and "the plaintiff's right to use and enjoy its premises." The judge found that the proposed use of the land of the Trust "is in conformity with all applicable laws and regulations of all governmental bodies," and, if material, "that the construction of the proposed two buildings in the planned location is reasonable in view of the location of access roads and the proposed future use of the land." He ruled that WMEX has no express or implied easement or easement by prescription and no right by virtue of its FCC license to interfere with the use to which the adjoining owners may put their land. The claims of easement and Federal right are not pressed on this appeal.

3. WMEX's remaining claim is one of private nuisance, an "invasion of the interest in the private use and enjoyment of land." Restatement 2d: Torts (Tent. draft No. 16, April 24, 1970), § 822. See Noel, Nuisances from Land in Its Natural Condition, 56 Harv. L. Rev. 772, 774–775. *Ferriter* v. *Herlihy*, 287 Mass. 138, 142–144. *Pendoley* v. *Ferreira*, 345 Mass. 309, 312–314. *Kurtigian* v. *Worcester*, 348 Mass. 284, 290–291. We think this claim is misconceived. The principle invoked relates to actual or threatened emissions from the offender's land — smoke, smells,

noise, buildings or trees likely to fall, and the like. If the neighbors were annoyed or disturbed by radio waves emitted from WMEX's land, perhaps they could claim that WMEX was maintaining a private nuisance. In such a case the fact that the Trust acquired or improved its land after the nuisance came into existence would not of itself be sufficient to bar its action, but it would be a factor to be considered in determining whether the nuisance was actionable. Restatement 2d: Torts (Tent. draft No. 16, April 24, 1970), § 840D. "Otherwise the defendant, by setting up an activity or a condition which results in the nuisance, could condemn all the land in his vicinity to a servitude without paying any compensation, and so could arrogate to himself a good deal of the value of the adjoining land." *Id.* comment *b.* By parity of reasoning, we do not believe that WMEX here, by its incidental use of the space above the adjacent premises, could condemn those premises to a servitude.

An analogy is provided by disputes over the rights of owners of land adjacent to an airport. In *Smith* v. *New England Aircraft Co. Inc.* 270 Mass. 511, 522, Chief Justice Rugg said of such an owner: "Doubtless, in the absence of controlling police regulation, one may erect a structure upon his land as high as he desires and is able." Decisions elsewhere have upheld the right of the landowner "to erect flagpoles, factory chimneys, or tall buildings . . . notwithstanding it might have entirely prevented the landing of airplanes." *Capitol Airways, Inc.* v. *Indianapolis Power & Light Co.* 215 Ind. 462, 466 (power line). *Jackson Municipal Airport Authy.* v. *Evans,* 191 So. 2d 126, 128–130 (Miss.) (trees). See *Gulf Television Co.* v. *Brown,* 301 S. W. 2d 256, 261 (Tex. Civ. App.), affd. sub nom. *Brown* v. *Gulf Television Co.* 157 Texas, 607 (television antenna tower); anno. 25 A. L. R. 2d 1454. In the present case there is no showing of spite or duress or the like, or of a use without benefit to the defendant. See *Gulf Television Co.* v. *Brown, supra.*

*Decree affirmed with costs of appeal.*