Jose L. Escobar & another[1] *vs.* Continental Baking
Company.

No. 91-P-754.

Bristol. May 21, 1992. - July 29, 1992.

Present: Dreben, Gillerman, & Porada, JJ.

*Nuisance. Damages*, Nuisance. *Injunction.*

Discussion of the law of nuisance with respect to the remedies of injunctive
   relief and damages. [105-106, 108-109]
In a civil action in which the plaintiffs sought to enjoin nighttime deliveries
   to a bakery distribution center adjacent to the plaintiffs' house, the
   judge was not warranted in awarding damages for nuisance, where the
   plaintiffs were aware of the bakery and the commercial nature of the
   area when they purchased the house and where the plaintiffs had ob-
   tained significant benefits from owning the property. [109-110]

Civil action commenced in the Superior Court Depart-
ment on May 14, 1987.

The case was heard by *John M. Xifaras*, J.

*Brian A. Davis* for the defendant.

*Fred M. Thomas*, for the plaintiffs, submitted a brief.

Dreben, J. The plaintiffs purchased a three-decker house
on Purchase Street in New Bedford adjacent to land on
which the defendant operates a bakery distribution center.
Bakery deliveries are made in trucks and tractor trailers,
and, in order to insure the freshness of the product, some
deliveries occur between the hours of midnight and 7:00 A.M.
Contending that the noise from the trucks is a nuisance, the
plaintiffs brought this action to enjoin the nighttime (early
morning) deliveries to the site. A judge of the Superior Court
denied injunctive relief, finding that the utility of the defend-
ant's conduct far outweighs the harm to the plaintiffs. In-

---

[1]Deolinda M. Escobar.

stead, he awarded $36,000 in damages, not for the diminution in value of the plaintiffs' property, as none was shown, but for the "nuisance which has affected their sleep." The award was to compensate them "for all past, present and future damages they are likely to undergo."

In this appeal by the defendant, we must consider whether, under circumstances where an injunction is too severe a remedy, damages may be awarded, and, if so, whether they may be recovered by the plaintiffs in this case. To be decided is whether it is reasonable to require that a cost — the harm to the plaintiffs — of the defendant's socially desirable activity be borne by the defendant. We hold that, while there are some situations where damages may be awarded, the recovery of damages in this case is not appropriate.

In contending that the judge's findings establish that its activities do not constitute a nuisance, the defendant recognizes that "[t]he law of nuisance affords no rigid rule to be applied in all instances. It is elastic. It undertakes to require only that which is fair and reasonable under all the circumstances." *Stevens* v. *Rockport Granite Co.*, 216 Mass. 486, 488 (1914). What the defendant fails to acknowledge is that, under the current law of nuisance, the denial of an injunction is not always a precedent for the denial of damages. Even where the utility of the defendant's conduct outweighs the gravity of the harm, a court may conclude, in some circumstances, that "a cost of carrying on that activity should be borne by the defendant; therefore, the activity is a nuisance, justifying a tort action for damages." Prosser & Keeton, Torts § 88A, at 631 (5th ed. 1984). See also *id.* at § 89, at 641. As stated in comment d, Restatement (Second) of Torts § 822 (1977), "It may be reasonable to continue an important activity if payment is made for the harm it is causing but unreasonable to initiate or continue it without paying." See also *id.* § 826 comment f; *Gilbert* v. *Showerman*, 23 Mich. 447, 456 (1871); *DeBlois* v. *Bowers*, 44 F.2d 621, 624 (1st Cir. 1930); *Boomer* v. *Atlantic Cement Co.*, 26 N.Y.2d 219, 226 (1970).

While there has been no explicit adoption of this concept by Massachusetts decisions, the focus in our cases on the balance of equities and what is reasonable under the circumstances, as well as the flexibility of relief afforded, leads us to conclude that the Supreme Judicial Court would concur in this approach. For example, in *Pendoley* v. *Ferreira*, 345 Mass. 309, 315 (1963), Justice Cutter, writing for the court, determined that, while the plaintiffs were entitled to have the offensive operation (a piggery) terminated, an injunction should be delayed to allow for a reasonable adjustment of the defendant's affairs. During the period of delay, additional payments were to be made to the plaintiffs for the harm caused. We see little difference in principle in allowing a defendant to continue its operations for a longer or more permanent time but with a concurrent obligation to pay a plaintiff for the loss.

Before recounting the facts found by the judge, we point out that we do not consider ourselves bound by his conclusion that it was unreasonable for the defendant to act as it did without paying for the harm that was inflicted on the plaintiffs. Whether a nuisance exists is factually based. *Strachan* v. *Beacon Oil Co.*, 251 Mass. 479, 485 (1925). The finding of a nuisance, however, embraces not only factual determinations but is also "a ruling as to what facts are sufficient in law to constitute a nuisance under the circumstances disclosed." *Kasper* v. *H.P. Hood & Sons*, 291 Mass. 24, 25 (1935). It "is a sufficiently mixed question of law and fact to permit an appellate court to resolve the issue at least where [as here] the action below was tried to the court." *Melrose Hous. Authy.* v. *New Hampshire Ins. Co.*, 402 Mass. 27, 31 n.4 (1988), quoting with approval the opinion of the Appeals Court in the same case, 24 Mass. App. Ct. 207, 215 (1987), which in turn quoted from *Cook* v. *Avien, Inc.*, 573 F.2d 685, 697 (1st Cir. 1978). In *Melrose*, the finding ("inherent unknowability") was made by a master; in *Cook*, the finding ("reasonable diligence") was made by a judge. See also *Shepard* v. *Finance Assocs. of Auburn, Inc.*, 366 Mass. 182, 189 (1974).

We turn to the facts as found by the judge and occasionally quote from his findings. Continental Baking Company's facility and the plaintiffs' adjacent three-decker house are both located on Purchase Street, a major north-south traffic route in New Bedford. "The neighborhood surrounding the plaintiffs' property has been commercial, busy and fairly noisy for decades." Also abutting the plaintiffs' building are a parking lot and a large commercial laundry that causes noise and emits odors. Trains run on railroad tracks next to, and parallel with, Purchase Street. Within two blocks of the plaintiffs' building are a major six-lane highway (Route 195), a major east-west traffic route (Coggeshall Street), and an all-night Sunoco gasoline station.

The defendant's building has been used in connection with the baking industry since 1915. Acquired by the defendant in 1926, the building was operated until 1965 as both a bakery and a distribution facility. From 1965 on, the property was used as a site for distribution of bakery products, and, until 1980, it also housed a thrift store where the defendant conducted retail sales. After the termination of its baking and retail operations, the defendant's activities generated less nighttime noise than before.

The defendant's use of the building has always entailed nighttime activities. The nighttime schedule of deliveries between midnight and 7:00 A.M. has been in effect since at least 1963. After 10:00 P.M. and before 11:30 A.M., deliveries to the New Bedford facility only take place once a night. The purpose of these deliveries is to maximize freshness, "the single most important attribute in the bakery business."

Products having a wholesale value of seven million dollars and a retail value of nearly nine million dollars are distributed annually from the New Bedford facility, where the defendant employs thirty-eight persons. Because freshness is important in order to be competitive, an injunction prohibiting nighttime deliveries would necessitate relocation of the defendant's plant. It would cost the defendant approximately $1.7 million to build a new distribution site.

The plaintiffs knew there was a bakery business next door when they bought their property for $35,900 in 1977.[2] The 1977 price reflected the property's location and the defendant's business activities.

Applying a balancing test of harm to the plaintiffs and hardship to the defendant, the judge found that injunctive relief was inappropriate because, as we indicated earlier, "the utility of the defendant's conduct far outweighs the harm done to the plaintiffs." See Restatement (Second) of Torts § 826.[3] He found, however, that the sleep of the plaintiffs was affected and that the plaintiffs had suffered damage due to the unreasonable interference with their use and enjoyment of their property. As compensation, the judge awarded them $36,000 to cover all past, present, and future damages.

While our cases have not discussed the factors which determine whether the plaintiff or the defendant should bear the loss to the plaintiff from conduct which is sufficiently in the social interest that it should not be enjoined, we think the same (or similar) considerations which have traditionally informed our nuisance determinations should also be applicable in deciding whether the less severe remedy of damages

---

[2]Jose Escobar testified that at the time of trial their property was worth $155,000. He also testified that he conducts a siding business there with three trucks.

[3]The "black letter" of § 826 provides:

"An intentional invasion of another's interest in the use and enjoyment of land is unreasonable if

(a) the gravity of the harm outweighs the utility of the actor's conduct, or

(b) the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct not feasible."

Under the Restatement's formulation, the "similar harm to others," e.g., to the plaintiffs' tenants and to other nearby residents, must be taken into account. Section 826 comment f. Since the judge did not consider the harm to others, and we, in any event, hold that the plaintiffs are not entitled to recover, we do not reach the question whether or in what manner such evidence should be considered where the action is not brought by a class.

should be awarded. This is consistent with what Prosser and Keeton suggest as some of the relevant factors:

"(1) the amount of the harm resulting from the interference;

"(2) the relative capacity of the plaintiff and the defendant to bear the loss by way of shifting the loss to the consuming public at large as a cost of doing business or by other means such as some type of insurance;

"(3) the nature of the plaintiff's use of his property;

"(4) the nature of the defendant's use of his property;

"(5) the nature of the locality;

"(6) priority in time as to the respective activities of the plaintiff and the defendant in the area." Prosser & Keeton, Torts § 88, at 630.

We also find instructive the authors' examples:

"Those who build residences in a rural area, and beyond the limits of a city and zoning regulations and the protection thus afforded, do so for many reasons, but they may justly and fairly be required to accept certain hazards of so doing. Moreover, if an industrial enterpriser first arrived in an area and plaintiff at a modest price purchased a tract for residential use, the fact that his use and enjoyment for such a purpose is substantially affected is not, generally speaking, a sufficient justification for relief." *Ibid.*

Applying these or analogous considerations to the findings of the judge, we conclude that this is not a case where it is reasonable to impose upon the defendant the cost of the noise encountered by the plaintiffs. While the plaintiffs have suffered some physical discomforts, they have obtained considerable benefits by coming to the area. They purchased the property at a price that reflected its location and the defendant's adjacent business; the property has increased considerably in value, see note 2, *supra*, and has, as Jose Escobar testified, special value to him as he can store his materials and trucks on the property and can maintain his construction business from the site. When they purchased the property,

the plaintiffs were aware of the bakery business and that the area was, in large measure, commercial.[4]

In determining whether a nuisance exists, the "character of the locality is a circumstance of great importance." *Kasper* v. *H.P. Hood & Sons,* 291 Mass. at 27. Moreover, while coming to a nuisance in itself does not bar relief, it, too, is a significant factor in determining what is fair and reasonable. "No one can move into a quarter given over to foundries and boiler shops and demand the quiet of a farm." *Stevens* v. *Rockport Granite Co.,* 216 Mass. at 488. There is here no suggestion that the neighborhood is changing or becoming less industrial, see *id.* at 489; *Pendoley* v. *Ferreira,* 345 Mass. at 310; or that by withholding damages the court is preventing changes in the locale thereby "arrogat[ing to the defendant] a good deal of the value of the adjoining land." Cf. *Richmond Bros.* v. *Hagemann,* 359 Mass. 265, 268 (1971), quoting from a predecessor draft to Restatement (Second) of Torts, § 840D comment b. Although the judge made no findings concerning the relative capacity of the plaintiffs and the defendant to reduce the effects of the noise, Escobar in testifying acknowledged that he did not use an air conditioner in the summer and also indicated that he did not think the defendant's offer to build a wall and a cover over its trucking activities would be helpful.

In sum, we conclude that there was error in the award of damages. The judgment for the plaintiffs is reversed and judgment is to enter for the defendant.

*So ordered.*

---

[4]The zoning by-law was not part of the record and the judge made no findings as to zoning. See *Weltshe* v. *Graf,* 323 Mass. 498, 500 (1948).