Cratsley, J.
Plaintiffs allege that Boston College’s use of St. John’s Seminary for parking during home football games substantially and unreasonably interferes with the use and enjoyment of their property, thus creating a common law nuisance. Plaintiffs seek injunctive relief. After a three day trial and upon consideration of all the evidence presented at that trial, this Court makes the following findings of fact and conclusions of law:
FINDINGS OF FACT
1. Plaintiff, William F. Galvin, resides at 46 Lake Street, Brighton, Massachusetts.
2. Plaintiff, Marion Alford resides at 40 Lake Street, Brighton, Massachusetts.
3. Trustees of Boston College, (hereinafter “Boston College”) have used the property known as St. John’s Seminary as a parking area for Boston College home football games for approximately ten years.
4. Boston College conducts home football games pursuant to an entertainment license issued by the City of Boston. Pursuant to the most recent license, September 6, 1996, Boston College is licensed to park a maximum of 700 cars at St. John’s Seminary on game days. (Exhibit 9.)
5. Lake Street abuts the grounds of St. John’s Seminary. The actual parking area on the Seminary property is not visible from the plaintiffs’ homes.
6. As of September 11, 1996, 625 passes have been issued to seasons’ ticket holders, allowing them to park at St. John’s Seminary during Boston College home football games.
7. There are three gates available for patrons to enter and exit St. John’s Seminary: the Commonwealth Avenue Gate, the Lake Street Gate, and the Foster Street Gate.
8. John Kane, Associate Athletic Director at Boston College, monitors parking at St. John’s Seminary. He testified that during the 1995 football season, 60% of those patrons parking at St. John’s Seminary used the Foster Street Gate, 25% used the Commonwealth Avenue Gate and 15% used the Lake Street Gate.
9. Lake Street is a one-way street. Cars entering St. John’s Seminary via the Lake Street Gate pass in front of the plaintiffs’ homes. However, cars exiting St. John’s Seminary via the Lake Street Gate do not pass in front of the plaintiffs’ homes.
10. There are six Boston College home football games scheduled for the 1996 season. The football games are scheduled to be played on the following Saturdays: September 14, 28, October 19, 26, November 9, and 16. Five games are scheduled to begin between 12:00 and 12:30 pm., and one game is scheduled to begin at 3:30 pm., November 9th. (Exhibit 6.)
11. During past football seasons, lines of cars waiting to park at St. John’s Seminary, have occasionally caused traffic delays on Lake Street and in the surrounding area. The traffic backup varies depending on the popularity of the opponent, the weather on game day, and the time of the football game.
12. Pedestrians from St. John’s Seminary parking lot, and the surrounding neighborhood, pass by the plaintiffs’ houses on Lake Street to attend Boston College football games. The heaviest car and pedestrian traffic occurs one hour prior to and for two hours after the games.
13. Robert Morse, Chief of Police at Boston College, testified that from his observations most patrons parking at St. John’s Seminary use the interior roadway of the Seminary to and from the Commonwealth Avenue Gate. These patrons never walk on Lake Street. The interior roadway is lit by lighting posts and flood lights on buildings. Boston College personnel have taken affirmative steps to encourage the use of this route, such as placing cones along the interior roadway to create a pedestrian walkway and by using additional generators for night game lighting.
14. Increased pedestrian traffic on Lake Street before and after football games causes an increased amount of littering; misconduct, such as urinating in public; and violations of the law, such as possessing open alcohol containers in public.
15. Boston College has responded to the traffic situation on Lake Street by posting signs informing patrons that a “pass” is required to park at St. John’s Seminary; by prohibiting “tailgating parties” at St. John’s Seminary; and by posting signs that it is a violation of the law to carry open alcohol containers.
16. Boston College, working in cooperation with the Boston Ci1y Police Department, has implemented an extensive parking and traffic plan, known as “The Game Plan,” to ensure that traffic is monitored and controlled during home football games. (Exhibit 5.)
17. Boston College created the Traffic Advisory Committee (TAC) which holds meetings on Monday’s *720 following home football games to assess and correct any traffic problems that may have occurred before or after home football games.
CONCLUSIONS OF LAW
For plaintiffs to prevail on their claim of nuisance they must prove by a preponderance of the evidence that Boston College’s use of St. John’s Seminary to park cars during home football games causes a “substantial and unreasonable interference with the use and enjoyment” of their property. Tarzia v. Hingham, 35 Mass.App.Ct. 506, 509-10 (1993) (quoting Asiala v. Fitchburg, 24 Mass.App.Ct. 13, 17 (1987)).
For the alleged nuisance to be characterized as “unreasonable,” the court must find that the severity of the inflicted injury to the plaintiffs outweighs the “utility of the defendant’s conduct.” Escobar v. Continental Baking Co., 33 Mass.App.Ct. 104 (1992). In balancing these interests, the court takes into account the character of the locality, and the existence of any alternative courses of conduct open to the defendant. Kasper v. H.P. Hood & Sons, Inc., 291 Mass. 24, 27-28 (1935).
Finally, the plaintiffs must prove that the interference with the enjoyment of their property is the proximate result of the activity sought to be enjoined. Garland v. Stetson, 292 Mass. 95, 104 (1935); Doe v. New Bedford Housing Authority, 417 Mass. 273, 288 (1994) [citing Asiala, 24 Mass.App.Ct. at 17).
The plaintiffs in this case have not persuaded this Court by a preponderance of the evidence that there has been a “substantial and unreasonable interference” with the use and enjoyment of their property. Asiala, 24 Mass.App.Ct. at 17. The plaintiffs complain of increased traffic, littering, public intoxication, and public urination on Lake Street. The plaintiffs allege that this behavior is caused by Boston College allowing patrons to park at St. John’s Seminary on Lake Street for home football games. The events creating the alleged nuisance occur only intermittently, five or six Saturdays each fall. The increased traffic only occurs one hour before and two hours after the football games. Each event has been, and continues to be responded to responsibly by Boston College and the Boston City Police Department. The severity of the inflicted injury is not of the type that constitutes a common law nuisance. Furthermore, to prevail on a claim of common law nuisance, the plaintiffs must prove that the interference with the enjoyment of their property is the proximate result of the activity sought to be enjoined. Id. The plaintiffs seek to enjoin Boston College from using St. John’s Seminary as a parking area for home football games. However, it is not clear from the facts presented at trial that the conduct complained of such as littering, public intoxication, and public urination, is caused by the patrons parking at St. John’s Seminary. Patrons engaging in offensive activity on Lake Street may very well be pedestrians from surrounding neighborhoods and not pedestrians parking at St. John’s Seminary.
In addition, plaintiffs have not adequately proven that the injuries they suffer outweigh the utility of the defendant’s conduct. Escobar, 33 Mass. at 104. It is necessary for Boston College to utilize available parking to accommodate those attending home football games. Furthermore, banning parking at St. John’s Seminary or closing the Lake Street Gate as plaintiffs seek, would only increase the flow of traffic in other adjoining residential neighborhoods.
In determining whether a nuisance exists, the “character of the locality is of great importance.” Kasper, 291 Mass. at 27. Parking to attend a college event is not inconsistent with the “character of the locality.” St. John’s Seminary and Lake Street are located in a “college community”; therefore, it is not unreasonable that St. John’s Seminary is used for parking during Boston College home football games. Sporting events and other large social activities are to be expected in a “college community.” Increased traffic and crowds attending such events, whether they be football games or graduations, are not unreasonable under the circumstances and are consistent with the character of the locality.
Boston College has taken significant steps to limit the impact that parking at St. John’s has on the community. For example, Boston College has posted signs informing patrons that only those with a “pass” are allowed to park at St. John’s Seminary, a well-organized traffic and parking plan has been implemented, and police presence has been increased on game day in the area of St. John’s Seminary. Boston College has created a Traffic Advisory Committee specifically to address concerns of the community, and finally, Boston College has responded to the traffic concerns of Lake Street residents by opening up more than one gate to St. John’s Seminary. Patrons parking at St. John’s Seminary presently have a choice of three gates for entering and exiting the lot to alleviate some of the car and pedestrian traffic on Lake Street. In addition, Boston College has taken affirmative steps to encourage those who park at St. John’s Seminary to walk through the Seminary grounds to and from Commonwealth Avenue, and not on Lake Street.
Because the plaintiffs have not been able to prove by a preponderance of the evidence that the defendant’s use of St. John’s Seminary for parking during home football games constitutes a legal nuisance, plaintiffs’ request for injunctive relief is DENIED.
ORDER
It is hereby ORDERED that judgment enter for the defendant.