WESTCHESTER ASSOCIATES, INC. *VS.* BOSTON EDISON
COMPANY.

No. 97-P-1389.

Middlesex. December 7, 1998. - June 16, 1999.

Present: JACOBS, SMITH, & RAPOZA, JJ.

*Nuisance. Real Property,* Easement. *Electricity. Unlawful Interference. Consumer Protection Act,* Unfair or deceptive act. *Negligence,* Electricity.

In an action for nuisance arising from electromagnetic interference with computer monitors in a building constructed in 1987 adjacent to an easement across the land on which standard electricity transmission lines had been constructed in 1962 and 1971, the defendant power company demonstrated that it lawfully and reasonably operated the lines within the scope of its easement [134-138]; and where no other basis for civil liability was shown [138], the judge correctly ordered summary judgment in favor of the power company.

CIVIL ACTION commenced in the Superior Court Department on December 20, 1994.

The case was heard by *Margot Botsford,* J., on a motion for summary judgment.

*L. Richard LeClair, III,* for the plaintiff.

*R.K. Gad, III,* for the defendant.

JACOBS, J. Westchester Associates, Inc. (Westchester), is the owner of a six-story office building in Framingham immediately adjacent to electric power lines[1] operated by Boston Edison Company (Edison). Magnetic fields generated by the power lines have caused disruption and distorted images on computer monitor screens used by tenants who leased space in West-chester's building. Claiming various injuries,[2] Westchester filed

---

[1]We use the terms "power lines" and "transmission lines" interchangeably.

[2]Westchester claims it has lost a tenant, been put to expense for necessary alterations, been unable to lease vacant space, and that Edison failed to respond to its requests to resolve those problems.

a complaint in the Superior Court alleging Edison's operation of the lines creates a nuisance; is negligent; intentionally interferes with Westchester's contractual relations with third parties; and that Edison is committing unfair and deceptive acts or practices under G. L. c. 93A.[3] A Superior Court judge allowed Edison's motion for summary judgment. We affirm.

*Background.* Acting under authority of the Department of Public Utilities, Edison, in 1956, took by eminent domain a one-hundred-foot wide easement for the construction and use of one or more transmission lines across land owned by Westchester's predecessor in title.[4] Subsequently two lines were constructed: one carrying 69 kilovolts (kv) in 1957 and, in 1962, a second line of 13.8 kv. In 1971, a 115 kv line was added, replacing the 1957 line. In 1978, Westchester purchased the land, a portion of which is subject to the easement. It constructed two buildings on the land, one in 1977-1978, and the other, at issue in this case, in 1987 (the 1987 building). An exterior wall of the 1987 building is located about two feet south of the southern boundary of the easement and about twenty-four feet from the nearest transmission line. Beginning in 1994 when most of the space was leased, tenants soon experienced distorted and "jittery" images on computer screens and the cause was attributed, in the affidavit of an expert, to the magnetic fields generated by Edison's power lines.[5]

*Discussion.* Westchester argues that the magnetic fields gen-

---

[3]The complaint also alleges that emissions from the power lines pose a health threat to persons regularly exposed to them. Westchester concedes that health concerns are not at issue in this case.

[4]The taking was made pursuant to G. L. c. 164, § 72, and G. L. c. 79. A subsequently recorded confirmatory easement executed by the predecessor in title indicates that $40,000 was paid to it by Edison.

[5]Westchester's expert concludes that the magnetic fields generated by the power lines caused the "jittery" images by disrupting the magnetic field generated internally by those devices which serves to direct and focus the images on the screens. He states that the resulting movement of the images on the screens is "most unpleasant to watch for any length of time whatsoever." He also notes that, because magnetic fields from power lines are "present in most environments," manufacturers of video screens provide shielding to protect them from interference that is effective for field strengths of "a few milliGauss." He opines that, in the range of ten milliGauss and above, such shielding is not effective. Actual measurements made in the building by an expert for one of the tenants generally were well above that value in the office areas located along the wall of Westchester's building nearest to Edison's lines.

For a thorough discussion of the nature of electric and magnetic fields

erated by Edison's power lines extend beyond its defined easement area, creating a substantial and unreasonable interference with Westchester's use and enjoyment of its land. This argument essentially is cast in the form of a claim of nuisance. Edison responds that, because it is lawfully operating its lines within the scope of its easement, it is entitled to judgment as matter of law.

A nuisance may result from an overly intensive use or an overburdening of an easement. Compare *Swensen* v. *Marino*, 306 Mass. 582, 585 (1940). See Eno & Hovey, Real Estate Law § 8.15.2 (3d ed. 1995 & Supp. 1998). We begin by determining what use of the easement is authorized to Edison by the relevant documents. They provide in pertinent part: "the perpetual right and easement to erect, install, construct, reconstruct, . . . use [and] operate . . . one or more transmission lines for the transmission of high and low voltage electric current . . . over, across and upon [the easement land]." Because the language of the easement is "clear and explicit, and without ambiguity, there is no room for construction, or for the admission of parol evidence, to prove that the parties intended something different." *Panikowski* v. *Giroux*, 272 Mass. 580, 583 (1930), quoting from *Cook* v. *Babcock*, 7 Cush. 526, 528 (1851).[6] The record demonstrates and there is no dispute that Edison's use of

(sometimes "electromagnetic" fields) associated with electric power transmission lines, see *San Diego Gas & Elec. Co.* v. *Superior Ct.*, 13 Cal. 4th 893, 903-910 (1996).

[6]Although "[t]he extent of an easement depends on the circumstances of its creation," *Mugar* v. *Massaachusetts Bay Transp. Authy.*, 28 Mass. App. Ct. 443, 444 (1990), "[t]he principles of interpretation designed to give effect to the express or implied intent of parties contracting for or acquiring an interest in land, however, are, in general, inapplicable to eminent domain proceedings. . . . The owner's intent is irrelevant in determining the extent of an easement taken by eminent domain, and the intent of the governmental body is largely beyond the scope of judicial scrutiny." *Id.* at 445.

We do not consider Westchester's assertion that the Legislature has not expressly authorized Boston Edison to emit magnetic fields beyond the scope of its easement and, in any event, could not have intended to sanction the harm Westchester has suffered. There is no record indication that the Legislature has addressed the issue of the generation of electromagnetic fields by electric power lines. Compare *Hub Theatres, Inc.* v. *Massachusetts Port Authy.*, 370 Mass. 153, 155-156, cert. denied, 429 U.S. 891 (1976).

Westchester's claim that Edison does not have a certificate of public convenience and necessity required for its lower voltage 13.8 kv line is without merit. The original determination of public convenience and necessity

the easement area has not changed since 1971, well before the time Westchester acquired its land.[7] The express terms of the easement are silent on the existence of electromagnetic fields or whether they were to be taken into account in the construction and operation of electric transmission lines.[8] In any event, a record statement by Westchester's expert that "[a]ll power lines generate magnetic and electric fields" is not disputed. There is undisputed evidence that the higher voltage line, principally at issue in this case, is of "standard industry design," and is similar to other Edison lines as well as many others "throughout the United States." Also, the report of an expert deposed by Westchester indicated that no regulatory standards for electromagnetic fields have been developed or are applicable to the lines in issue. We conclude, therefore, that Edison has demonstrated that its use of the easement is of the same "amount and character" as authorized, *Swensen* v. *Marino*, 306 Mass. at 583, and we

---

was based on an approval for both high and low voltage lines and does not limit the number of lines, voltage, or when they may be constructed or reconstructed.

[7]Westchester mistakenly relies on *Western Mass. Elec. Co.* v. *Sambo's of Mass., Inc.*, 8 Mass. App. Ct. 815 (1979), to support its assertion that its land is not burdened by Edison's easement. That case concerned the extent to which the owner of servient land could use that land in a manner not inconsistent with the easement, and which would not materially increase cost or inconvenience to the easement holder in the exercise of its rights. In the present case we do not reach any consideration of whether the construction of Westchester's building was inconsistent with Edison's rights. Compare *Richmond Bros.* v. *Hagemann*, 359 Mass. 265, 268 (1971).

[8]Massachusetts cases have not yet considered the effects of electromagnetic fields generated by electric power lines. The present case does not require that we rely on decisional law in other jurisdictions. We cite some authorities, however, which offer guidance. See *San Diego Gas & Elec. Co.* v. *Superior Ct.*, 13 Cal. 4th 893, 936 (1996) (intangible phenomena such as electric and magnetic fields, not directly perceived by the senses, not actionable intrusions); *Borenkind* v. *Consolidated Edison Co.*, 164 Misc. 2d 808, 810 (N.Y. Sup. Ct. 1995) (no duty owed to owners of land near high voltage power lines when publicly sanctioned use is carried out in a legally authorized manner; invasive quality of electric and magnetic fields, imperceptible to ordinary senses, and lacking scientific evidence of harmful effects, not a nuisance); *Edgcomb* v. *Lower Valley Power & Light*, 922 P.2d 850, 858-860 (Wyo. 1996) (summary judgment for defendant affirmed, the court holding that electromagnetic fields from power lines operated in easement area are neither a trespass nor an "unreasonable, unwarranted, or unlawful" use, and "do not constitute a nuisance"). See generally Bruce & Ely, The Law of Easements and Licenses in Land §§ 6.04[1] & 8.07[1] (rev. ed. 1995 & 1999 Cum. Supp. No. 1).

Westchester Associates, Inc. *v.* Boston Edison Company.

agree with the carefully crafted opinion of the Superior Court judge that Edison's use is reasonable, as matter of law.[9]

Further, Westchester's claim that the fields constitute a nuisance has no legal support.[10] Not only has the character of the magnetic fields generated not changed during the times here relevant, contrast *Stevens* v. *Rockport Granite Co.*, 216 Mass. 486, 491 (1914), but our law has not recognized those fields as a nuisance.

A significant difficulty with Westchester's attempt to characterize the magnetic fields as a nuisance is that their adverse effects would be experienced only by particular users of equipment sensitive to the fields. There is no contention that the fields are directly detectible by human senses. See note 8, *supra*. Thus, they do not constitute an annoyance to a plaintiff of "ordinary sensibility." *Malm* v. *Dubrey*, 325 Mass. 63, 65 (1949), and cases cited. The inquiry to determine whether such fields constitute a nuisance will likely vary as computers and other electronic equipment may become more sophisticated and sensitive. There may come a time when increasing knowledge or changing uses may require, as matter of public policy, the modification of the use of electric power line easements, but this case does not call for such remediation. We conclude that

---

[9]Westchester claims that the reasonableness of the use of an easement is a question of fact, and not appropriate for a summary judgment determination. The plaintiff's reliance on cases such as *Doody* v. *Spurr*, 315 Mass. 129, 133-134 (1943), and *Tindley* v. *Department of Envtl. Quality Engr.*, 10 Mass. App. Ct. 623, 628 (1980), is misplaced. Such cases involve the interpretation, on a reasonableness standard, of rights not explicitly granted. They stand in sharp contrast with the detailed rights expressed in the easement in the present case. Where, as here, we are presented with the relevant facts in a summary judgment record, it is open to us to rule "what facts are sufficient in law to constitute a nuisance." *Kasper* v. *H.P. Hood & Sons, Inc.*, 291 Mass. 24, 25 (1935). See *Escobar* v. *Continental Baking Co.*, 33 Mass. App. Ct. 104, 106 (1992); *Edgcomb* v. *Lower Valley Power & Light*, 922 P.2d 850, 859-860 (Wyo. 1996).

[10]There is no evidence that the permitted use has substantially disturbed the servient land or unreasonably diminished its value after Edison acquired the easement. In any event, Edison compensated Westchester's predecessor in title in taking the easement. The present record does not indicate more than the consideration paid, $40,000, nor whether that valuation was based on any special incidents related to the proposed construction of electric power lines. Compare *Richmond Bros.* v. *Hagemann*, 359 Mass. 265, 268 (1971); *Roman Catholic Bishop of Springfield* v. *Commonwealth*, 378 Mass. 381, 382-383 (1979). Whatever compensation was required for the servitude imposed appears to have been paid.

Westchester's nuisance claim, unsupported in the law, fails, and that because Edison reasonably is exercising its easement rights, it is entitled to summary judgment.

*Other issues.* There is no evidence that Edison knowingly induced any Westchester tenant to breach its lease, or that Edison did so with any improper motives or means. See *United Truck Leasing Corp.* v. *Geltman,* 406 Mass. 811, 812-817 (1990). Given our decision, the alleged failure of Edison to resolve the problems experienced by Westchester's tenants does not constitute unfair or deceptive acts or practices under G. L. c. 93A, § 11. Finally, because Edison operates its power lines intentionally and not in violation of statutory and regulatory standards, its acts and operations are not negligent. See *Sabatinelli* v. *Butler,* 363 Mass. 565, 567 (1973); *Waters* v. *Blackshear,* 412 Mass. 589, 590 (1992).

*Judgment affirmed.*