Tucker, Richard T., J.
On May 12, 2005, the Board of Trustees of North High Gardens Condominium Trust (“the Condominium Trust”) and Sande P. Bishop (“Bishop”) filed a complaint for injunctive and declaratory relief, pursuant to G.L.c. 231 A, seeking a declaration that the defendant, Jeanne Y. Curtis (“Curtis”), does not own or otherwise hold a property interest in three parking spaces located at the North High Gardens condominium complex in Worcester, Massachusetts. Curtis filed counterclaims alleging that the Condominium Trust violated Chapter 93A and breached a contract with Curtis. She also filed a third-party complaint against Wonmi Kwon (“Kwon”), individually and as trustee of the Condominium Trust, alleging the same counts. The matter is before the court on the Condominium Trust and Bishop’s motion for summary judgment. For the following reasons, the motion is ALLOWED to the extent that it seeks a declaration that Curtis does not have a property interest in the parking spaces in question. It is further DECLARED that the parking spaces shall revert back *246 to the Condominium Trust to be held as common areas for the benefit of the condominium’s unit owners.
BACKGROUND
The following facts are drawn from the summaiy judgment record and viewed in the light most favorable to the nonmoving party. Attorney Gen. v. Bailey, 386 Mass. 367, 371 (1982).
The Condominium Trust is an organization of individuals who own units at the North High Gardens condominium complex at 60 Salisbuiy Street in Worcester, Massachusetts. Curtis owned Unit 202 of the condominium complex from September 19, 1983, until March 11, 1998, when she sold the unit to Bishop. Kwon is a trustee of the Condominium Trust.
When Curtis purchased Unit 202, a recitation in the deed to her unit stated: “Said Unit is conveyed together with:... 2. The exclusive right and easement to use the parking space numbered 86 as shown on the parking and storage plan recorded with the Master Deed in Plan Book 509, plan 63.”
Paragraph 11 of the Master Deed of North High Gardens Condominium (“the Master Deed”) provided that the Condominium Trust “reserves the right, until such time as it shall cease to own any units, (i) to sell to unit owners exclusive easements to parking spaces which are not subject to exclusive easements and (ii) to erect a garage or garages on the common areas and to sell to unit owners exclusive parking easements within such garage or garages; all of which exclusive easements shall, upon such sales, become appurtenant to the units benefited.”
The Master Deed also provided that “Unit Owners shall have the right to assign and/or sublet the parking space(s) to which they have an exclusive easement only to the occupants of other Units in North High Gardens Condominium.” Both G.L.c. 183A and the Master Deed include “parking areas” within the scope of “common areas and facilities.”
Pursuant to Paragraph 11 of the Master Deed, the Condominium Trust solicited Curtis to purchase parking space #36 for $3,500.00. On or around September 10, 1986, Curtis purchased the exclusive right and easement to use parking space #36 for $3,500.00. A Declaration of Easement for parking space #36 was recorded with the Worcester County Registry of Deeds on January 12, 1987. The Declaration of Easement stated that “(s]uch easement to use said parking space shall be appurtenant to the ownership of said Unit 202.”
Sometime thereafter, Curtis purchased two additional parking spaces, #46 and #56, for $8,000.00. A Declaration of Easement for parking spaces #46 and #56 was recorded with the Worcester County Registry of Deeds on September 9, 1988. It included the same terms as the easement for parking space #36, providing that the exclusive right and easement to use the spaces “shall be appurtenant to the ownership of said Unit 202.”
On March 11, 1998, Curtis sold Unit 202 to Bishop. The Purchase and Sale Agreement also conveyed to Bishop the exclusive right and easement to use parking space #86 — the parking space initially granted to Curtis when she purchased Unit 202 in 1983. A Unit Deed was recorded with the Worcester County Registry of Deeds on March 17, 1998.
In July 1998, Bishop’s attorney wrote to Curtis’ attorney inquiring about the Curtis’ three additional parking spaces. Curtis stated that she would sell the remaining spaces for $5,000.00 each, but would prefer to sell the three spaces as a package. Through her counsel, Bishop declined to purchase any of the spaces.
From 1998 to 2004, the Condominium Trust treated Curtis as the owner of parking spaces #36, #46, and #56. In 2003, the Condominium Trust charged Curtis maintenance fees for the parking spaces, even though Curtis no longer owned Unit 202. Curtis continued to rent the parking spaces to unit occupants until late 2004, when the Condominium Trust, at Kwon’s direction, stopped referring owners and tenants to Curtis. In 2005, the Condominium Trust and Bishop brought this action to enjoin Curtis from using the parking spaces and seeking a declaration as to who holds the right to control the spaces.
The plaintiffs now move for summaiy judgment on their complaint. They seek a declaration that Curtis does not own parking spaces #36, #46, and #56 because they were expressly made appurtenant to Unit 202 and, therefore, Curtis’ property interest in them was severed when she conveyed Unit 202 to Bishop. Additionally, the Condominium Trust seeks a declaration that the parking spaces at issue are part of North High Gardens’ common area, and that both G.L.c. 183A, §5(b), and Paragraph 7 of the Master Deed[3] prohibit any conveyance that alters the undivided interest of each unit owner in a common area without unanimous consent and an amendment to the Master Deed, and that such conditions were not met. Thus, the Condominium Trust urges that its initial transfer of the parking spaces to Curtis was invalid and, therefore, Curtis could not legally have conveyed any appurtenant interest in the spaces to Bishop upon the sale of Unit 202. Under this theoiy, the parking spaces would revert back to the Condominium Trust.
At the same time, Bishop, who is represented by the same counsel as the Condominium Trust despite having a conflicting interest in the outcome,[4] suggests that she, as the present owner of Unit 202, owns exclusive rights to the parking spaces as appurtenances to Unit 202.
In opposition, Curtis alleges that, notwithstanding the precise language of the Declarations of Easement to the parking spaces at issue, she negotiated for and agreed upon easements in gross to each parking *247 space. She alleges further that the Condominium Trust held itself out as having the authority to grant easements in gross to the parking spaces.[5] Curtis also contends that the fact that the Condominium Trust continued to recognize and treat her as the legal owner of the parking spaces even after she conveyed Unit 202 to Bishop precludes it from refusing to treat the conveyances as easements in gross.
With respect to Bishop’s claim, Curtis contends that Bishop purchased Unit 202 with the understanding that it included only one appurtenant parking space, and that Bishop had no reasonable expectation that the Unit Deed she received from Curtis for Unit 202 simultaneously conveyed the three additional parking spaces.
DISCUSSION

1. Whether the easements were appurtenant or in gross

Where the language of an easement is “clear and explicit, and without ambiguity, there is no room for construction, or for the admission of parol evidence, to prove that the parties intended something different.” Panikowski v. Giroux, 272 Mass. 580, 583 (1930), quoting from Cook v. Babcock, 7 Cush. 526, 528 (1851); see also Westchester Assocs. v. Boston Edison Co., 47 Mass.App.Ct. 133, 135 (1999) (citing same). The Declarations of Easement granting Curtis exclusive use of parking spaces #36, #46, and #56 expressly stated, “Such easement to use said parking space shall be appurtenant to the ownership of said Unit 202.”
Notwithstanding Curtis’ contention that the recorded Declarations of Easement do not reflect the parties’ actual agreement and that she did not have an opportunity to review the documents prior to recording, the Master Deed itself provides that the exclusive easements that the Condominium Trust was authorized to convey were appurtenant.[6] Although there is evidence in the summary judgment record that the Condominium Trust treated Curtis as the owner of the parking spaces even after she sold her unit to Bishop, the instruments themselves make clear that the exclusive rights sold to Curtis were appurtenant to her ownership of Unit 202. Neither the Declarations of Easement nor the Master Deed permits the creation of an easement in gross in favor of a unit owner. Therefore, the court will not consider extrinsic evidence to determine whether the parties actually intended to create an easement in gross for Curtis’ benefit. See Panikowski, 272 Mass. at 583; Pion v. Dwight, 11 Mass.App.Ct. 406, 412 (subsequent use may be relevant to determining scope of easement, but only if there is some ambiguity that requires explanation). The conclusion that the interests granted were appurtenant to Unit 202 is consistent with the general presumption favoring appurtenant easements over easements in gross. See Schwartzman v. Schoening, 41 Mass.App.Ct. 220, 223 (1996), citing Willets v. Langhaar, 212 Mass. 573, 575 (1912) (“An easement is not presumed to be personal unless it cannot be construed fairly as appurtenant to some estate”).
Nothing in this court’s decision precludes Curtis from pursuing civil remedies against the Condominium Trust or the appropriate trustees; however, as a matter of property law, the Condominium Trust could not legally have conveyed more than it was authorized to convey under the relevant statute and the Master Deed. Although the court is sympathetic to the likelihood that Curtis was subjectively unaware of the nature of the rights she purchased, the court cannot disregard the legal instruments that facilitated the transaction, and neither can Curtis. Accordingly, the court finds that any rights granted to Curtis to use parking spaces #36, #46, and #56 were appurtenant to Unit 202.
A question remains as to whether Curtis’ exclusive easements to the parking spaces transferred to Bishop when she purchased Unit 202, or whether the Condominium Trust’s grants of the exclusive easements were void ab initio because they violated G.L.c. 183A, §5(b), as in effect when Curtis purchased the right to use the parking spaces. The answer depends on whether subsequent amendments to G.L.c. 183A, which now permits condominium organizations to grant easements under subsection 5(b) without the unanimous consent of unit owners, apply retroactively to the transactions.

2. Whether 1998 amendments to G.L.c. 183A apply retroactively to the grant of exclusive easements to Curtis

The Declarations of Easement granting Curtis exclusive rights to the three parking spaces were recorded on January 12, 1987, and September 9, 1988. AsofMay29, 1987, G.L.c. 183A, §5(b), read in relevant part: “The percentage of the undivided interest of each unit owner in the common areas and facilities as expressed in the master deed shall not be altered without the consent of all unit owners whose percentage of the undivided interest is affected, expressed in an amended master deed duly recorded” (emphasis added).[7] St. 1987, c. 242. In Kaplan v. Boudreaux, the Supreme Judicial Court observed that “(t]he grant of exclusive use to one unit owner of a common area is sufficient to change the relative interest of the unit owners in that common area." 410 Mass. 435, 443 (1991). Accordingly, consistent with the statutoiy language and judicial interpretation in effect at the time Curtis purchased the rights to the parking spaces, the Condominium Trust would have been required to obtain unanimous consent from unit owners prior to altering the owners’ relative interests by selling off pieces of their common area, including the rights to parking spaces. Based on the summary judgment record, it appears that the Condominium Trust neither obtained such approval nor amended the Master Deed to reflect the easements. Curtis does not dispute this point.
*248 In 1998, the Legislature amended G.L.c. 183A, §5(b), to read in part: “The granting of an easement by the organization of unit owners, or the designation or allocation by the organization of unit owners of limited common areas and facilities, or the withdrawal of a portion of the common areas and facilities, all as provided for in this subsection, shall not be deemed to affect or alter the undivided interest of any unit owner* (emphasis added).
The issue is thus whether the 1998 amendments to G.L.c. 183A, §5, apply only prospectively, such that the Condominium Trust’s grant of exclusive rights to the parking spaces exceeded its authority because it was not undertaken with the consent of all unit owners whose undivided interests were affected. Compare Kaplan, 410 Mass. at 443, with G.L.c. 183A, §5(b)(l), as amended by St. 1998, c. 242. If the pre-amendment incarnation of the statute applies, then unanimous consent was required because the Legislature had not yet abrogated the judicial pronouncement in Kaplan that the grant to one owner of exclusive use over a common area was sufficient to change other unit owners’ relative interests.
The 1998 amending legislation provides, “[TJhis act shall apply to all master deeds, and amendments thereto, without regard to whether such master deed or amendment was recorded before, on or after the effective date of this act.” St. 1998, c. 242, §11. Here, the exclusive easements over the parking spaces at issue were created not by master deed or amendment thereto, but rather by Declarations of Easement. There is no indication that the Legislature intended to make the amendments to G.L.c. 183A retroactive with regard to easement agreements, such as the ones here, that were not reflected in a condominium organization’s master deed or amendments thereto. “Absent language mandating retrospective application of an amendment, the amended statute should not be applied to conduct occurring prior to the effective date of the amendment.” See Quintal v. Commissioner of the Dep't of Employment and Training, 418 Mass. 855, 856 n.1 (1994). Accordingly, the court concludes that the pre-1998 version of the statute governs and, therefore, the Condominium Trust was required to obtain the unanimous consent of all other unit owners before granting the exclusive easements to Curtis (or to any other unit owner, for that matter). Consequently, the Declarations of Easement, though duly recorded, were void ab initio, as the Condominium Trust was without authority to effect the transfers without obtaining the necessary approval.
In light of the court’s determination that the pre-1998 statute operates to invalidate the exclusive easements granted to Curtis, it need not consider whether the agreements would have satisfied the current enactment of G.L.c. 183A, §5.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs’ motion for summary judgment be ALLOWED to the extent it seeks a declaration that Curtis does not have a property interest in parking spaces #36, #46, and #56. It is further DECLARED that:
1. The three parking spaces in question shall revert back to the Condominium Trust as common areas held for the collective benefit of the unit owners.
2. The Condominium Trust’s initial grant of exclusive rights to the parking spaces to Curtis exceeded its authority under G.L.c. 183A, §5(b)(l), as enacted at the time. Thus, the grant was void and Bishop has no entitlement to the parking spaces as appurtenances to Unit 202.
3. This order shall not dispose of Curtis’ third-party complaint and counterclaims for monetary damages.

Paragraph 7 of the Master Deed provides: “(iv) no instrument of amendment which alters the percentage of undivided interest in and to the common areas and facilities to which any unit is entitled shall be of any force or effect unless the same has been signed by all Unit Owners and said instrument is recorded as an amended Master Deed.”

According to Curtis’ affidavit, Bishop was elected President of the North High Gardens Condominium Board of Trustees shortly before this suit commenced. However, Bishop is suing for personal control of the parking spaces in her individual capacity as the owner of Unit 202.

rhe correspondence between the Condominium Trust and Curtis during negotiations to purchase parking space #36 refers to the property interest as an “exclusive right and easement,” but does not define the nature of the easement. The correspondence during negotiations to purchase parking spaces #46 and 56 simply indicates that the spaces were available for “purchas[e]” at a price of $4,000.00 per space.

With regard to parking, Paragraph 11 states that the “exclusive easements shall, upon such sales, become appurtenant to the units benefited.”

Piior thereto, the subsection read: ‘The percentage of the undivided interest of each unit owner in the common areas and facilities as expressed in the master deed shall not be altered without the consent of all unit owners, expressed in an amended master deed duly recorded.” The 1987 amendment simply clarified the point that the condominium organization need only obtain the consent of those unit owners whose interests were affected